**LOEWEN GROUP INTERNATIONAL, INC., Plaintiff,**

v.

**William J. HABERICHTER, Defendant.**

**No. 93 C 7377.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 22, 1994.

Kevin E. White, Catherine W. Joyce, Winston & Strawn, Chicago, IL, for plaintiff.

Patrick Joseph Fanning, Kathryn M. Reidy, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Among other things, plaintiff Loewen Group International, Inc. ("Loewen") owns and operates funeral homes and cemeteries. Loewen is currently suing defendant William J. Haberichter ("Haberichter") for breaching an employment agreement that included a covenant not to compete. Presently before us is Haberichter's converted motion for summary judgment.[1] For the following reasons, we grant the motion.

### I. Factual Background

In 1992, Loewen, a Delaware corporation, acquired the funeral home business of Donovan and Schaer Funeral Homes, P.C. ("D & S"). At the time of the purchase, Haberichter was an assistant manager at D & S's Arlington Heights' location.[2] According to Loewen, D & S, like most funeral home businesses, relies heavily on the goodwill and local contacts of its employees within the community in which it operates. Consequently, it is not unusual for buyers to include, as a condition of sale, that certain key employees of the seller remain with the business for at least a transitional period. Similarly, sellers generally agree not to compete with their former business, either directly or indirectly, within a reasonable radius and for a reasonable period of time.

In the Asset Purchase Agreement signed by Loewen and D & S, D & S agreed not to participate in a competing business within 50 miles of either the Arlington Heights or Des Plaines facility. Furthermore, in addition to providing that each of D & S's principals[3] would enter into similar covenants not to compete, the Agreement required Loewen to enter into individual employment contracts with, among others, Haberichter. If Haberichter did not wish to be bound by such an agreement, he could decline. However, if he chose to avail himself of an employment agreement, the Agreement stipulated that the employment contract would contain a covenant not to compete. Cmplt., Exh. B at ¶¶ 12 & 13.

In February, 1992, Haberichter and Loewen signed an individual employment contract under which Haberichter was to work for Loewen for at least five years at an annual salary of $52,000 and was to refrain from competing with Loewen within a ten mile radius of the facility for a period of at least ten years. As separate consideration for this covenant, Haberichter received $75,000. Cmplt., Exh. C. at ¶ 12(b).

According to Loewen, barely had the ink dried on the employment agreement before Haberichter began making plans to set up a competing funeral home. Haberichter allegedly compiled records and information regarding families D & S had served in Arlington Heights, prepared a business plan and financial projections for his potential facility, and began getting the financing and permits necessary to launch a funeral home. Finally, in November, 1993, Haberichter told Loewen that he was planning to open a competing funeral home in April, 1994, and that he had been working on the project for several months.[4] At the same time, Haberichter tendered his resignation, seeking to obtain severance benefits pursuant to his employment agreement. Loewen did not permit

---

1. Haberichter originally sought to dismiss Loewen's complaint as preempted under § 301 of the Labor Management Relations Act ("LMRA") and under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Because determination of these legal issues turned, in part, upon Haberichter's union status, we converted Haberichter's motion to dismiss to a motion for summary judgment, permitting the parties to submit evidence regarding Haberichter's union membership. Accordingly, Loewen's motion to strike is denied as moot.

2. D & S also had a Des Plaines site.

3. "Principals" were defined as majority shareholders and included Robert E. Schaer, Donald R. Hartman, and Lee J. Schlegal.

4. The new business is being developed at 3615 Kirchoff Road, which is slightly over 3 miles from the Arlington Heights location (as the crow flies), and just under 7 miles from the Des Plaines location. The competing site is also within ten miles driven.

Haberichter to "resign," but has sued its former employee for breach of the employment agreement (Count I), breach of the covenant not to compete (Count II), breach of fiduciary duty (Count III), and for injunctive relief (Count IV).

## II. Discussion

As discussed above, we converted Haberichter's motion to a motion for summary judgment in order to address legal issues stemming from Haberichter's union status. Although Loewen was given an opportunity to challenge Haberichter's union membership, it proffered no evidence suggesting that the defendant, in fact, was not a member of the Funeral Directors and Embalmers Union Local No. 727. Accordingly, we proceed to address the merits of Haberichter's motion.

### A. Preemption of Counts I, II and III by § 301 of the Labor Management Relations Act

■ Section 301 of the LMRA, 29 U.S.C. § 185(a), confers jurisdiction on federal courts over disputes involving violations of collective bargaining agreements. In an effort to ensure uniformity of adjudication, the Supreme Court has ruled that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement," the state-law claim is preempted. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 412–13, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). *See also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, the Court emphasized that "an application of state law is pre-empted by § 301 of the [LMRA] only if such application requires the interpretation of a collective bargaining agreement." Accordingly, in ruling on state law claims, a court may look at the same facts that would govern the outcome of a contract claim, but the claim will only be preempted if the court is called upon to interpret a term of a collective bargaining agreement. *See Pantoja v. Texas Gas and Transmission Corp.,* 890 F.2d 955, 959 at n. 1 (7th Cir.1989) (court held that § 301 did not preempt retaliatory discharge claim where complaint frequently referred to collective bargaining agreement, but did not require interpretation of any terms).

Here, the parties disagree about whether resolution of Counts I (breach of the employment contract), II (breach of the covenant not to compete), and III (breach of fiduciary duty) will require this Court to interpret the collective bargaining agreement. Because Loewen is suing Haberichter based on an independent employment contract, rather than on the collective bargaining agreement itself, Loewen maintains that Counts I, II, and III do not, and logically will not, require any interpretation of the collective bargaining agreement. Haberichter, on the other hand, contends that the collective bargaining agreement is inescapably implicated here, because the employment agreement contains terms that conflict with the collective bargaining agreement, imposing on Haberichter terms that are more onerous than those contained in the union agreement.

■ Both positions have merit. There is no question that a plaintiff may pursue state law claims in connection with an individual employment contract, despite the fact that the relationship is also covered by a collective bargaining agreement, as long as the complaint is not "substantially dependent" upon interpretation of the collective bargaining agreement. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394–95, 107 S.Ct. 2425, 2430–31, 96 L.Ed.2d 318 (1987) ("As the Court has stated, 'it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'") (quoting *Allis–Chalmers Corp.,* 471 U.S. at 212, 105 S.Ct. at 1912). *See also Lingle,* 486 U.S. at 409–10, 108 S.Ct. at 1883 ("[I]f dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.").

■ However, courts have regularly found preemption where provisions in an independent contract are inconsistent with (in a less favorable manner than) a term of the collec-

tive bargaining agreement.[5] *See, e.g., Melanson v. United Air Lines, Inc.,* 931 F.2d 558, 561 (9th Cir.1991) ("[T]he Supreme Court has ruled that the CBA supersedes inconsistent individual employment contracts.") (citing *J.I. Case Co. v. NLRB,* 321 U.S. 332, 337–39, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944)); *Bale v. General Telephone Co.,* 795 F.2d 775, 779 (9th Cir.1986) ("The individual employment contracts entered into by Bale and Fife could therefore be effective only insofar as they were consistent with the collective agreement."); *Malia v. RCA Corp.,* 794 F.2d 909, 912 (3rd Cir.1986). Accordingly, there is some threshold burden on a court being asked to enforce an individual employment contract to examine the related collective bargaining agreement to determine whether the contract conflicts with the agreement.[6]

■ Haberichter suggests that the necessity of looking to the collective bargaining agreement to assess whether inconsistencies exist, by itself, results in preemption. We disagree. As the Ninth Circuit has aptly observed:

> If [an examination of the collective bargaining agreement's terms] were [an interpretation], the section 301 preemption doctrine would swallow the rule that employees covered by collective bargaining agreements are entitled "to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective bargaining agreement."

Milne Employees Ass'n. v. Sun Carriers, Inc.,* 960 F.2d 1401, 1409–10 (9th Cir.1992) (quoting *Caterpillar,* 482 U.S. at 396, 107 S.Ct. at 2431). This is not to say that perusal of a collective bargaining agreement will never result in preemption. Where a conflicting (or potentially conflicting) provision is uncovered, preemption may well be required, since assessment of whether the collective bargaining agreement is actually inconsistent with the contract will necessary involve the court in interpreting the agreement.[7]

### 1. Count I

■ Here, Haberichter, albeit belatedly, identifies several provisions of the collective bargaining agreement that potentially conflict with the individual employment contract before us. First, Haberichter argues that he was fired for cause, and points out that the collective bargaining agreement covers discharge for cause, thereby creating a conflict. Indeed, the collective bargaining agreement states that "[a]n employer member shall not discharge any employee without just cause," but fails to limit the definition of "cause." On the other hand, the employment contract permits discharge for cause, and goes on to define "cause" to mean various things, including "actively and intentionally pursuing interests of a competitor to the detriment of Company or Chapel." Agreement, ¶ 18(a)(iv). Although "cause" is more specifically defined in the employment contract, it is unclear whether the superficially more narrow definition of "cause" in the employ-

---

5. Indeed, Loewen concedes that "[t]his court can enforce the agreements sued upon unless the provisions in the agreement sued upon are inconsistent with a term in the CBA...." Motion for Leave to File Plaintiff's Surreply to Defendant's Motion to Dismiss at 1–2.

6. The Seventh Circuit does not appear to have addressed this particular issue. However, there is logic to the notion that independent employment contracts that restrict, rather than expand, rights guaranteed under a parallel collective bargaining agreement undermine the collective bargaining process and should not be enforced. Accordingly, we agree with those circuits that have interpreted *J.I. Case* to prohibit enforcement of individual contracts that are inconsistent with collective bargaining agreements. *See J.I. Case,* 321 U.S. at 338, 64 S.Ct. at 580 ("It is equally clear since the collective trade agreement is to

serve the purpose contemplated by the Act, the individual contract cannot be effective as a waiver of any benefit to which the employee otherwise would be entitled under the trade agreement. The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group.").

7. This circumstance can be distinguished from *Milne* itself, in which the Ninth Circuit was able to look at the collective bargaining agreement and conclude that none of its provisions touched upon length of employment (the term at issue in the case). The absence of any competing language in the collective bargaining agreement eliminated the need for any interpretation by the court. *Milne,* 960 F.2d at 1409.

ment agreement restricts or expands the termination provision in the collective bargaining agreement. That is, while the collective bargaining agreement on its face allows for termination for "cause," it remains unclear whether "cause" includes competition. Determination of whether the two agreements conflict (in a manner more restrictive of Haberichter's rights) requires interpretation of the collective bargaining agreement.[8] Accordingly, we need look no further to conclude that Count I of the complaint is preempted. We therefore grant Haberichter summary judgment on Count I.

### 2. Count II

■ Haberichter further argues that he should be awarded summary judgment on Count II because the covenant not to compete is clearly inconsistent with the collective bargaining agreement. Haberichter bases this claim on the fact that the collective bargaining agreement specifically states that "employees may perform jobs the same as or substantially similar to those covered by this agreement for employers who have a substantially similar agreement with the union." CBA, Article X, Section 3. According to Haberichter, because the collective bargaining agreement permits employees to work for competitors, the covenant not to compete more narrowly confines his rights. Loewen explains that the proffered provision simply pertains to possible economic retribution in the wake of a strike and therefore does not pretend to proscribe employees' competitive rights in any other circumstances. However, the meaning of Article X, section 3 is not clear from the face of the collective bargaining agreement. As such, in order to determine whether the covenant not to compete restricts Haberichter's rights, we would necessarily have to interpret the collective bargaining agreement. Given this fact, we find

that Count II is preempted and grant Haberichter summary judgment on it.

### 3. Count III

■ Finally, Haberichter argues that he is entitled to summary judgment on Loewen's breach of fiduciary duty claim. In Count III, Loewen complains that Haberichter, as an employee, violated his duty of loyalty and good faith by setting up a competing business. Although it is not clear whether Loewen is alleging that these duties derived from the employment relationship as governed by the collective bargaining agreement or by the individual employment contract, under either scenario the claim is preempted.

Haberichter's basic employment status is governed by the collective bargaining agreement. Obviously, then, if Loewen is charging that Haberichter's status as an employee, by itself, gave rise to a duty of loyalty and good faith, then the claim implicates the collective bargaining agreement and is preempted. Alternatively, if Loewen maintains that Haberichter's duty of loyalty and good faith arises from the individual employment contract, then we can only enforce the duty if the contract itself is consistent with the collective bargaining agreement. As discussed above, however, there are potential inconsistencies between the agreements regarding Haberichter's freedom to work for competing businesses. Accordingly, under any analysis, Count III is preempted.[9]

### B. Rule 11 Sanctions

■ Haberichter has also moved for Rule 11 sanctions against Loewen, arguing that an investigation into the governing law would have revealed the fact that Loewen's complaint was preempted by § 301 and/or *Garmon.* In addition to the fact that Haberichter fails to make this motion in a separate pleading, as required by Rule 11, *see*

---

**8.** Plaintiff's reliance on the reasoning of Judge Marovich's opinion in *Donaldson v. Bradley Printing Co.,* No. 90 C 5170, 1992 WL 358855 (N.D.Ill. Nov. 25, 1992), is unavailing. In *Donaldson,* the court did not address the issue of whether a determination regarding inconsistencies between the collective bargaining agreement and the individual employment agreement at issue would involve the court in an interpretation of the collective bargaining agreement. Instead,

the court simply resolved that resolution of the merits would not involve interpretation of the agreement.

**9.** Given our resolution that Counts I through III are preempted by § 301 of the LMRA, we need not address Haberichter's contention that the claims are preempted under the *Garmon* doctrine.

Fed.R.Civ.P. 11(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests...."), we do not share Haberichter's belief that § 301's applicability was beyond dispute. Indeed, Haberichter's motion for sanctions borders on the frivolous and is denied.

### III. Conclusion

For the foregoing reasons, we grant defendant's converted motion for summary judgment on plaintiff's complaint and deny his motion for sanctions.[10] It is so ordered.

---

10. Although neither party discusses Count IV, it is clear that Loewen's claims for injunctive relief do not survive in the absence of Counts I through III. Accordingly, judgment on the entire complaint is appropriate.