**Michael McCARTY, Plaintiff,**

v.

**REYNOLDS METALS CO., Defendant.**

**No. NA 94–93–C.**

United States District Court,
S.D. Indiana,
New Albany Division.

April 4, 1995.

---

William C. Moyer, Lorch & Naville, New Albany, IN, for plaintiff.

William H. Hollander, Steven L. Snyder, Wyatt Tarrant & Combs, Louisville, KY, for defendant.

BARKER, Chief Judge.

This matter is currently before the court on Reynolds Metals Company's ("Reynolds") motion to dismiss Plaintiff's Amended Complaint and this court's Order of January 5, 1995, directing the briefing of specific issues raised by the court. For the reasons set forth below, we grant Defendant's motion to dismiss.

## I. FACTUAL BACKGROUND

Plaintiff Michael McCarty is employed by Reynolds as a machinist in Reynolds' Louisville plant. Reynolds is engaged in the production and sale of aluminum foil. McCarty's duties included the maintenance and upkeep of Reynolds' equipment.

In March, 1988, McCarty devised a new process designed to eliminate maintenance down-time and, accordingly, increase Reynolds' production rates of aluminum foil. The development of this process was done on his own time and while working at his residence. Soon thereafter, McCarty and Reynolds entered into an oral agreement concerning Reynolds' use of that process. Specifically, Reynolds agreed to promote McCarty to a supervisory job in Research and Development if he installed his new process and that process actually reduced down-time and increased production.

Approximately four to six weeks later, McCarty completed the production of a prototype of his invention and demonstrated its use to Reynolds. Reynolds again orally agreed to promote McCarty to a supervisory position if the invention reduced down-time and increased production.

. Subsequently, Reynolds installed McCarty's process on the production lines at its Louisville and Richmond, Virginia, plants. Plaintiff alleges that his process did in fact reduce down-time and increase production. However, Reynolds has neither promoted nor compensated him as negotiated in their agreement.

On June 6, 1994, McCarty filed a pro se complaint against Reynolds in Harrison Superior Court. The Complaint stated that McCarty wished "To be paid in full for work perform [sic] between 5–88—1–89." During this time, the terms and conditions of McCarty's employment were governed by two successive collective bargaining agreements ("CBA's"), which were in effect from June 1, 1986, to May 31, 1992.

On July 7, 1994, Reynolds removed the action to this court and moved to dismiss, claiming that McCarty failed to exhaust the CBA's grievance and arbitration process. McCarty, now represented by counsel, responded by seeking leave to file an amended complaint. The Amended Complaint alleged claims for breach of contract and unjust enrichment. We granted McCarty's motion to amend his Complaint and denied as moot Reynolds' motion to dismiss. However, we also asked the parties to brief the following three issues: (1) whether McCarty has framed a cause of action under § 301 of the National Labor Relations Act, 29 U.S.C. § 185(a); (2) if the Amended Complaint sufficiently asserts only state-law contract claims, whether the allegations relating to jurisdiction satisfy the requirements of diversity of citizenship and amount in controversy; and (3) if the Court's jurisdiction is properly invoked under diversity, whether the § 301

preemption issue will come into the case as a defense. If the first two questions are answered in the negative, then the Court lacks subject matter jurisdiction. If either is answered affirmatively, then we must consider the merits of Defendant's renewed motion to dismiss.

## II. DID PLAINTIFF FRAME A § 301 CAUSE OF ACTION?

■ The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Under this rule, the plaintiff is "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Id.; see also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913).

■ The doctrine of complete preemption, however, exists as an "independent corollary to the well-pleaded complaint rule." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. Under this doctrine, "if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983).

■ The complete preemption doctrine "is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. Section 301 [1] governs disputes regarding collective bargaining agreements, and mandates the application of uniform federal law to resolve such disputes. Indeed,

the pre-emptive force of § 301 is so powerful as to displace entirely any state cause

---

1. Section 301 provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Franchise Tax Board,* 463 U.S. at 23, 103 S.Ct. at 2853–54.[2] However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement" arises under federal law. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Rather, only "claims founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis" of a CBA trump the well-pleaded complaint rule and establish federal jurisdiction. *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431 (citations omitted).

The Supreme Court applied this test in a situation similar to the case at bar in *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In that case, the plaintiffs alleged that their employer breached individual employment agreements that pre-dated their joining the union. The alleged agreements derived from the employer's repeated representations that the plaintiffs would enjoy continuing employment, even if one of the defendant's facilities were to close. The defendant then removed the action to federal court, arguing that removal was proper because any claims based on individual contracts were preempted by § 301.

In holding that removal was improper, the Court noted that the mere existence of a collective bargaining agreement does not prevent an employee from bringing state law claims based on an independent agreement. Rather,

> a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long

as the contract relied upon is *not* a collective-bargaining agreement.

*Caterpillar,* 482 U.S. at 396, 107 S.Ct. at 2431 (emphasis in original). Because the job security agreements pre-dated plaintiffs' participation as union members, the Court found that the individual contracts were not substantially dependent upon interpretation of the CBA. Accordingly, the Court affirmed the Ninth Circuit's remand of the case to state court.

In this circuit, the Court of Appeals has found federal question jurisdiction when "the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." *Matter of Amoco Petroleum Additives Co.,* 964 F.2d 706, 709 (7th Cir.1992) *quoting Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988). For example, in *Amoco Petroleum* the court held that a female employee's state law claim for invasion of privacy caused by the employer's installation of a video camera in the women's locker room arose under § 301 for purposes of establishing federal jurisdiction. Although the CBA did not expressly cover surveillance, the employer argued that the subject was covered by implication under the contract's management rights clause. The court agreed, reasoning that in order to determine whether the surveillance was unjustified, the state court would have to construe the CBA and reject the management-rights argument. 964 F.2d at 709–710.

■ The common thread running throughout this caselaw is straightforward: a plaintiff may assert state contract rights independent of an operative CBA *"so long as the contract relied upon is not a collective-bargaining agreement."* *Caterpillar,* 482 U.S. at 396, 107 S.Ct. at 2431 (emphasis added). It is not enough that the plaintiff is a member of the bargaining unit: "Claims bearing no relationship to a collective-bargaining

---

**2.** Generally, collective bargaining agreements provide for grievance and arbitration procedures and unless an employee can show that he was not fairly represented by his union, grievance and arbitration is the employee's exclusive remedy for a breach of the agreement. *See* Mark A. Rothstein, 2 Employment Law 316–21 (1994).

To escape the exclusivity of the contractual remedies, employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the CBA. Nevertheless, many of these cases are in fact section 301 suits and as such are governed by federal law.

agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *Caterpillar,* 482 U.S. at 396 n. 10, 107 S.Ct. at 2432 n. 10. Rather, resolution of the state-law contract claim must require a court to construe the meaning of the CBA.

### A. Unjust Enrichment Claim

 Under Indiana law, the essential elements of an unjust enrichment claim are well known. A plaintiff must establish that a measurable benefit has been conferred under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind.1991). To be unjust, one must labor with a reasonable expectation of payment. *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 429 (7th Cir.1991); *Biggerstaff v. Vanderburgh Humane Society, Inc.,* 453 N.E.2d 363, 364 (Ind.App.1983).

 Whether McCarty had a reasonable expectation of payment will require the interpretation and application of the CBA. The CBA, for example, specifically provides that "all designing and experimental work connected with the trade ... and the making of all parts of machinery and equipment ... are to be considered work covered by this Agreement." (CBA, Art. II § 2). Design and experimental work connected with the trade is exactly what McCarty now seeks compensation for. Evaluation of his claim, therefore, will require the factfinder to examine the CBA to determine whether he is seeking additional compensation for work he was already duty-bound to complete. In other words, because McCarty's side agreement pertains to work covered by the CBA, the factfinder will have to interpret the CBA to determine the reasonableness of his expectation to receive additional compensation for the completion of that work.

In that respect, the situation at bar is similar to *Smith v. Colgate–Palmolive Co.,*

943 F.2d 764 (7th Cir.1991). In that case, the court considered whether several union employees reasonably relied on representations made by their employer concerning job security when the CBA specifically contained provisions regarding seniority and layoffs. The court concluded that determining the reasonableness of the plaintiffs' reliance on these side agreements would require interpretation of the CBA:

> [Should this case go to trial] the jury would have to put themselves in the position of an 'ordinary' employee covered by the [CBA] and told of these representations. At a minimum, the jury would be forced to read and interpret the provisions of the [CBA] to determine whether a reasonable person would have relied on the representations of permanent employment knowing that ... eligibility for vacation and enrollment in Company benefit plans ... [were covered in the CBA].

*Id.* at 769 *quoting Smith v. Colgate–Palmolive Co.,* 752 F.Supp. 273, 270 (S.D.Ind.1990).

Thus, the issue is whether a reasonable employee, told that he would receive benefits for the completion of experimental work, would have reasonably expected to receive such benefits in light of the corresponding provisions in the CBA. Because the answer to that question will require the interpretation of the terms of the CBA, we find that Plaintiff's unjust enrichment claim is preempted by § 301.[3]

### B. Breach of Contract Claim

 Plaintiff also argues that his breach of contract claim exists independently of the CBA.[4] Federal courts have on numerous occasions considered whether private side agreements entered into between union employees and their employers are preempted by § 301. At least three distinct lines of cases have emerged. The first line of cases holds that § 301 does not preempt state contract claims arising before the aggrieved employees became represented by a union or

---

**3.** *Cf. Edelman v. Western Airlines, Inc.,* 892 F.2d 839, 844 (9th Cir.1989) (whether an independent contract contradicts a CBA "clearly would require a court to construe the Agreement").

**4.** Under Indiana law, the essential elements of a breach of contract action are (1) the existence of a contract, (2) the defendant's breach thereof, and (3) damages. *Fowler v. Campbell,* 612 N.E.2d 596, 600 (Ind.App.1993); *Essex Group, Inc. v. Nill,* 594 N.E.2d 503, 506 (Ind.App.1992).

after the termination of the CBA. *See Caterpillar*, 482 U.S. 386, 107 S.Ct. 2425 (promise made to employee before he joined bargaining unit); *Berda v. CBS, Inc.*, 881 F.2d 20 (3d Cir.1989) (same); *Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir.1986) (same); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217 (3d Cir.1995) (employer promise to take effect upon expiration of CBA). Because the plaintiffs were not part of the collective bargaining unit at the time the side agreement was to take effect, these courts have concluded that the independent agreements were not subject to the CBA.

The second line of cases is the inverse of the first. It holds that section 301 preempts state law breach of contract claims when the employee is covered by a CBA at the time of the agreement. *See Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir.1992); *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir.1990); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283 (9th Cir.1989); *Maushund v. Earl C. Smith, Inc.*, 795 F.2d 589 (6th Cir.1986); *Nipper v. Garage Door Group, Inc.*, 1992 WL 331326 (D.Kan.1992). The rationale behind these cases is that the collective bargaining process extinguishes an individual employee's power to order her relations with her employer and creates a power vested in the union to act in the interests of all employees. Thus, once a plaintiff is covered by a CBA, "any contract would necessarily involve interpretation of the CBA and its provisions and is thus preempted." *Nipper*, 1992 WL 331326 at *5.

Finally, the third line of cases is the least permissive. It finds preemption when a union employee asserts contractual rights independent of the CBA that conflict or potentially conflict with provisions in the CBA. *See Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401 (9th Cir.1991); *Wells v. General Motors Corp.*, 881 F.2d 166 (5th Cir.1989); *Bale v. General Telephone Co.*, 795 F.2d 775 (9th Cir.1986); *Loewen Group Intern'l, Inc. v. Haberichter*, 863 F.Supp. 629 (N.D.Ill.1994); *Leonardis v. Burns Intern'l Security Services, Inc.*, 808 F.Supp. 1165 (D.N.J.1992). In these cases, preemption is warranted because resolution of the state-law contract claims requires the factfinder to construe the meaning of the CBA and to examine the intent of the contracting parties.

Although the Seventh Circuit has not expressly favored one approach over the other, we note that McCarty was a member of the bargaining unit at the time of the alleged oral promise. As a result, the first line of cases is inapplicable.

As to the other two lines of cases, we find that McCarty's breach of contract claim is preempted by § 301 using either approach. Significantly, McCarty was (and is) a union employee who was operating under a CBA at the time that the representations were made. Moreover, the subject matter of his agreement is expressly covered by the CBA. Because a side agreement between a union employee and an employer concerning work covered by the CBA is only effective insofar as it accords with the collective bargaining agreement, McCarty's "individual contract claim is thus effectively a claim for breach of the CBA." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997–98 (9th Cir.1987). Framed as such, the resolution of McCarty's claim would necessarily involve interpretation of the CBA and examination of "the practices and customs of a workplace whose conditions are governed by a CBA." *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir.1991).[5] Accordingly, we find that McCarty's suit for breach of the individual contract falls within the preemptive scope of section 301.

## III. MOTION TO DISMISS

 Because the Court concludes that both of Plaintiff's claims arise under § 301, we must consider whether Plaintiff can maintain an action under that provision. An individual employee may bring suit against his employer for breach of a collective bargaining agreement. *Smith v. Evening News Ass'n*, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). However, the employee is required to attempt to exhaust the grievance and arbitration remedies provided in

---

5. "By way of contrast, a breach of contract claim concerning a job not governed by a collective agreement could be effective independent of the [CBA]." *Young*, 830 F.2d at 98.

the CBA. *DelCostello v. Intern'l Brotherhood of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983); *Smith,* 943 F.2d at 771.

An employee may bypass the grievance and arbitration procedures outlined in a CBA when the union "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290. Such a suit comprises two claims: one against the employer for violations of § 301 and one against the union for breach of the union's duty of fair representation.

In this case, Plaintiff has alleged neither. That is to say, Plaintiff has not alleged that he attempted to exhaust the grievance remedies provided for in the CBA. Nor has he alleged that the union breached its duty of fair representation. Having failed to exhaust those remedies, Defendant's motion to dismiss must be granted.

### IV. CONCLUSION

The Court concedes that the § 301 preemption issue presented here was a close one. Nevertheless, if

> employees were free to negotiate and enforce separate ... agreements ... and then if they were permitted to enforce these oral agreements under state law, much of the federal concern for swift resolution of disputes through grievance and arbitration procedures, or ... for consistent interpretation of contract terms would be undermined.

*Kern v. United Steelworkers of America,* 669 F.Supp. 701, 704 (M.D.Pa.1987). Thus, for the reasons stated above, the Court finds that both of Plaintiff's counts are preempted under § 301 and that he failed to exhaust his administrative remedies. Accordingly, we grant the defendant's motion to dismiss.

It is so ORDERED.