UNITED STATES of America,
Plaintiff–Appellee,

v.

SECURITY PACIFIC BUSINESS
CREDIT, INC., Defendant–
Appellant.

No. 90–2624.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1992.

Decided Feb. 12, 1992.

Jeffrey L. Hunter, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, Ind., David E. Carmack (argued), Douglas W. Snoeyenbos, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

Stephen K. Huffer (argued), Marvin Mitchell, Olivia Napariu, Mitchell, Hurst, Jacobs & Dick, Indianapolis, Ind., for defendant-appellant.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

We must try to make sense of two overlapping tax statutes that lack any implicit or explicit cross-reference—statutes that exist as it were in a state of mutual oblivion. The earlier enacted one, 26 U.S.C. § 6672(a), imposes "a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over" on anyone who, being "required to collect, truthfully account for, and pay over any tax," willfully fails to do so. The usual application of this, the "responsible persons" statute, is to employers, or their executives, who fail to remit withholding taxes to the government. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Monday v. United States*, 421 F.2d 1210, 1214 (7th Cir.1970). The later statute, 26 U.S.C. § 3505(b), provides that if a lender lends money to an employer for the purpose of enabling the employer to pay wages, and

knows that the employer will not pay the withholding taxes due on those wages, the lender, even if he does not exert enough control over the employer's affairs to be deemed a responsible person, see *Fidelity Bank, N.A. v. United States*, 616 F.2d 1181, 1185–86 (10th Cir.1980), shall be liable to the government "in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages." However, this statute caps the lender's liability at 25 percent of his loan. The responsible-persons statute contains no such cap. It also makes no reference to interest, and this has been assumed to mean that the responsible person has no liability for interest on unpaid taxes that accrues between the date that the employer's tax should have been paid and the date on which the Internal Revenue Service assessed the statutory penalty. So at least the parties to this case assume and they are not alone in this assumption. *First National Bank v. United States*, 591 F.2d 1143, 1149 (5th Cir.1979); Note, "Taxation: Lender Liability Under I.R.C. § 3505(a)," 39 *Okla.L.Rev.* 348, 352 n. 27 (1986). Though we have found no analysis of the question, the assumption is reasonable. The penalty is measured by the tax required to be withheld from the employees' paychecks and paid over to the government, and that tax if duly withheld and paid over would include no interest—interest accrues only if the tax is *not* withheld and paid over on time. In contrast, the words "together with interest" in section 3505 have been interpreted—inevitably, we should think—to mean that the net-payroll lender is liable for interest on payroll taxes from the date on which they should have been paid to the government, as well as for the taxes themselves. Treas.Reg. § 31.-3505–1(b)(1)(ii); *United States v. Intercontinental Industries, Inc.*, 635 F.2d 1215, 1221–22 (6th Cir.1980); *United States v. Hannan Co.*, 639 F.2d 284 (5th Cir.1981).

■ The net-payroll lender statute provides that payments made under it shall be credited against the tax (and, presumably, interest) due from the employer, the original taxpayer. 26 U.S.C. § 3505(c). There is no counterpart in section 6672 but the policy of the Internal Revenue Service is similar: it tries to collect the tax due only once, thereby treating the section 6672 "penalty" as a tax. *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186, 1191 (7th Cir.1989); *Callahan v. Schultz*, 783 F.2d 1543, 1548 (11th Cir.1986) (per curiam); IRS Policy Statement P–5–60, 1 *CCH Internal Revenue Manual* 1305–14 (May 30, 1984); Gerald G. Portney & David P. Culp, "Who's Responsible? The Government's Weapon Against Unpaid Withholding Taxes," 10 *Rev. Taxation of Individuals* 169 (1986). It might seem that if the Service had managed to collect the tax owed it by the employer there would be no responsible-person liability in any event and so no need for an administrative policy of lenity. But there could be liability: The responsible person might have caused the taxpayer not to pay the tax, yet the Service might have collected it anyway in enforcement proceedings. Or it might have collected only part of it. Yet the Service's policy is, as we have said, not to pile the penalty atop the tax. If for example the Service were owed $100,000 by the employer, and it managed to squeeze $10,000 out of him, it would assess the responsible person, if there were one, only $90,000. What it would do if the employer owed $90,000 in tax and $10,000 in interest and could pay only $20,000—whether, in other words, the Service would dun the responsible person for $70,000 (thereby ignoring interest) or $80,000—we do not know. We see no statutory obstacle to its collecting the full $80,-000. For that matter, there is no apparent statutory obstacle to the Service's collecting the full tax from the taxpayer and the full penalty from the responsible person. *Levit v. Ingersoll Rand Financial Corp.*, supra, 874 F.2d at 1191. Apparently the Service declines to take the penalty route because it fears that if it treated section 6672 as a *real* penalty rather than merely as a device for collecting unpaid taxes the courts would impose too heavy a burden of proof on it. Portney & Culp, *supra*.

The overlap between the two statutes has been analyzed extensively, Note, *su-

*pra;* Larry A. Makel & James C. Chadwick, "Lender Liability for a Borrower's Unpaid Payroll Taxes," 43 *Bus. Lawyer* 507 (1988); Richard A. Kaye, "A Primer on the Defense of Banks Against Liability for Unpaid Withholding Taxes," 2 *Compleat Lawyer* 37 (1985); Ronald Michael Meneo, "Lender Liability Under Sections 6672 and 3505," 13 *Rev. Taxation of Individuals* 181 (1989), but the specific question of cumulative liability has not been analyzed at all, so far as we can find; and, as we have said, it also has not been the subject of a reported case.

■ Security Pacific, the defendant in this case, was a heavy lender to Mystic Tape, Inc., which early in 1983 defaulted. Security Pacific took control of Mystic's finances, telling it what it could and could not spend money on. Over a period of six weeks Security Pacific lent Mystic almost half a million dollars for the purpose of paying Mystic's employees—on condition that none of this money be used to pay withholding taxes, although Security Pacific well knew that Mystic had no other source of funds that it could use to pay those taxes. At the end of the six weeks Mystic filed for bankruptcy, and from then on it paid its withholding taxes when due. But it never paid the withholding taxes due for the six weeks.

In 1987 the Internal Revenue Service slapped an assessment of $241,488.70 on Security Pacific under section 6672 and a further assessment on it of $123,009.50 under section 3505. The first figure represented the amount of withholding taxes that Mystic should have paid but did not pay during the period when its wage bill was financed by Security Pacific. The second figure represented pre-assessment interest (up to 25 percent of Security Pacific's loan) on the $241,488.70 in unpaid withholding taxes. When Security Pacific refused to pay either amount and the government sued, the complaint asked for these sums in the alternative; but five days before the trial the judge permitted the government to change the word "alternative" to "additional." At trial the judge found that Security Pacific had been both a

section 6672 responsible person and a section 3505 net-payroll lender, and concluded that since the amount sought by the government under the latter section was for (part of the) preassessment interest, which section 3505 allows, and did not exceed 25 percent of the amount of the loan, the government was entitled to both amounts. 735 F.Supp. 1421 (S.D.Ind.1991). He entered judgment accordingly, from which Security Pacific appeals, complaining only about the cumulation of remedies and not about the judge's finding that it is liable under both sections.

Security Pacific points out correctly that any lender who so far controls his borrower's disbursements as to be adjudged a responsible person will almost certainly violate the net-payroll lender statute as well, and in such a case, it argues, the 25 percent cap will be nugatory if we allow a cumulation of remedies. For the loan to Mystic was for less than $500,000 while the judgment against Security Pacific is for almost $400,000—which is 80 percent of the loan rather than 25 percent. Indeed the preassessment interest alone exceeded the 25 percent cap and had to be cut down accordingly. Security Pacific argues that the government should be content with enforcing full responsible-person liability against it under 6672 and should not use 3505, in violation of the spirit as well as letter of the 25 percent ceiling in that statute, to circumvent Congress's unexplained decision not to allow the collection of preassessment interest from responsible persons.

That is one way to look at this pair of statutes but not the only or the best way. Consider to begin with a case in which the responsible person and the lender are two different persons, rather than one as in this case, and assume the assessments are as in this case, with the principal amount of the tax being assessed against the responsible person and preassessment interest against the lender. The responsible person cannot complain, because he is made to pay no more than he owes. The net-payroll lender cannot complain either, because interest is one of the things he owes, and the amount he is made to pay is under the 25 percent

ceiling. The government obtains no windfall, for it merely collects the tax plus interest. It is not as if Congress didn't *want* the government to collect the tax plus interest. That would be an implausible suggestion. The tax is due, and unpaid; the taxpayer therefore owes interest as well as tax, and isn't paying the interest either; so the government has had to turn elsewhere for the money. So long as the government doesn't collect more than it is owed, it can hardly be accused of seeking windfalls. Section 6672 is silent on preassessment interest, that is true, and it has been assumed, though perhaps prematurely for all we know, that silence in this matter should be construed as a limitation. But no one has given us a *reason* for the omission, and we have not been able to think up one on our own. It appears to have been an oversight. The later statute allows a less culpable entity to be assessed both tax and interest, and while there is the 25 percent cap, often it will be above the sum of tax and preassessment interest, especially if the loan was outstanding for only a short time. So it is not as if Congress had some *aversion* to making persons who are complicit in withholding-tax violations liable for the full cost of the violation to the government, and we are reluctant to truncate section 3505 in order to protect a nonexistent policy.

Security Pacific asks us to impute omniscience to Congress. Congress *must* have had a reason for not making the penalty in section 6672 equal to the sum of the tax due and interest on the tax, and *must* have had a reason when it plugged the net-payroll lender loophole in section 6672 by passing section 3505 for not taking the opportunity to amend the older statute to make responsible persons liable for preassessment interest too. But legislative omniscience is not a realistic assumption. Moreover it belongs to a style of statutory interpretation—the rule-bound style rather than the purposive—that places greater emphasis on the text of statutes than on intentions behind them. In this case the government has the text on its side, while from the standpoint of purposive interpretation we can find no indication that artificially curtailing the government's right to its tax revenues in a case such as this would serve the desires or intentions of Congress.

We have been discussing the hypothetical case in which the responsible person and the lender are two different persons but the analysis is unchanged if they are the same person. Liability for two wrongs that inflict two distinct harms is not generally less just because the two wrongs are committed by one person rather than by two. Why should it be less here? There is no reason to believe that by failing to provide for preassessment interest in section 6672 Congress meant to confer a benefit on a lender who should happen to be a responsible person as well—who should, that is, actually compound his wrongdoing. There is no reason to believe that by placing a 25 percent ceiling on a net-payroll lender's liability Congress intended to benefit a responsible person, for it is only by virtue of the money that it has been ordered to pay as a responsible person that Security Pacific can argue that the ceiling has been pierced. The interest assessment under 3505 didn't pierce it, because the government limited that assessment to 25 percent of the loan.

It is true that if a net-payroll lender were always also a responsible person, the 25 percent ceiling would be a nullity. But this conjunction, at least if we can judge from the absence of reported cases, is unusual. Therefore we do not deprive the ceiling of all practical effect, as Security Pacific argues, by allowing the government to proceed unhindered against the responsible person who happens also to be a lender. And anyway Security Pacific did benefit from the cap in this case, since the preassessment interest exceeded 25 percent of its loan and was therefore cut back.

■■■■ Security Pacific has a back-up position, which is that the district court shouldn't have allowed the government to amend its complaint to change the theory of its case a bare five days before trial. But amendments to complaints are liberally allowed under the Federal Rules of Civil Procedure up to and even after trial, judg-

ment, and appeal, in cases in which there is no harm to the defendant from the tardy amendment. Fed.R.Civ.P. 15(a), (b); *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 690 (7th Cir.1985); *Guse v. J.C. Penney Co.*, 570 F.2d 679, 680 (7th Cir.1978); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1488 (2d ed. 1990). No harm is claimed in this case apart from the burden of additional research to meet the government's claim, and that burden would have been the same if the claim had been in the original complaint.

AFFIRMED.