**Jimmy D. SMITH, et al., Plaintiffs,**

v.

**CHRYSLER CORPORATION; UAW Local 685 and UAW International, Defendants.**

**No. IP 93–1455–C M/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 26, 1996.

Michael C. Kendall, Kendall Law Office, Indianapolis, IN, for Plaintiffs.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN, Richard J. Swanson, Macey Macey & Swanson, Indianapolis, IN, for Defendants.

## ORDER

McKINNEY, District Judge.

This matter comes before the Court on the motions for summary judgment filed by defendants Chrysler Corporation ("Chrysler") and UAW Local 685 and UAW International (collectively the "Union"), and on the motion for leave to amend the complaint filed by the plaintiffs (the "Employees"). The Employees have not responded to the pending summary judgment motions, although the time for response expired on May 2, 1996. Instead, on April 29, 1996, they filed a motion for leave to amend along with a proposed amended complaint that omits the Age Discrimination in Employment Act ("ADEA") claim for which both Chrysler and the Union had sought summary judgment.

The Court has been fully briefed on the motion for leave to amend, and if the Court deems amendment of the complaint proper the summary judgment motions will be rendered moot. Alternatively, if the Court denies the motion for leave to amend, it will be obliged to make a summary ruling on the pending summary judgment motions in the absence of any briefing from the plaintiffs. This matter is now ready for resolution.

## I. MOTION FOR LEAVE TO AMEND

### A. FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely undisputed, in part because the Employees did not file any materials in opposition to the defendants' motions for summary judgment. For purposes of resolving the Employee's motion for leave to amend, a brief review of the history of this case is in order.

The Union represents Chrysler employees who work in the Kokomo, Indiana transmission plant ("Kokomo Plant"). The Union and Chrysler have been parties to successive collective bargaining agreements ("CBA") for more than forty years. Union Append. Tab 2, Hill Aff. ¶ 2. The plaintiffs were originally employed at the Chrysler electrical plant in Indianapolis ("Indianapolis Plant"), but during a layoff from that plant they transferred at various times between 1979 and 1986 to the Kokomo Plant. While they were at the

Indianapolis Plant they were covered by the Chrysler and UAW national CBA, which is the same agreement used at the Kokomo Plant and at issue here. The Employees' dates of entry at the Indianapolis Plant for seniority purposes were 1967, 1968 and 1973.

Under a provision of the national CBA, the Employees were allowed to apply for work in the Kokomo Plant under a "Work Opportunity" plan. Hill Aff. ¶ 4. The "Work Opportunity" plan provided:

> Notwithstanding the applicability of Section (64) to Corporation plants in the same labor market area, in employing new people in Corporation plants in the State of Indiana covered by the Production and Maintenance Agreement between Chrysler Corporation and the International Union, UAW, dated October 25, 1985, the plant will give work opportunity pursuant to Section (64) to employees covered by the same Agreement who are at the time on indefinite layoff from other Corporation plants in that State, provided they make application for such work within forty-five (45) days of the date of the definite layoff.
>
> \*　\*　\*　\*　\*　\*
>
> Employees who elect not to return when recalled shall retain any rights accrued for purposes of holiday pay, payment in lieu of vacation, pensions, insurance and the Supplemental Unemployment Benefit Plan. Seniority rights of employees who are laid off from the plant in which they were placed pursuant to the first sentence of this letter shall at the time of such layoff be governed by the provisions of Section (64)(b) of the Production and Maintenance Agreement dated October 28, 1985.

Hill Aff. Ex. A.

Section 64 of the 1985 Agreement allows employees who are laid off from one plant to seek a work opportunity at another plant located in their own labor market. A revision memorialized in a letter attached to the 1985 Agreement ("Work Opportunity Plan") broadens the territory in which such employees can seek a work opportunity to include the entire State of Indiana. Union Append. Tab 1, Ex. B. That is the plan under which the Employees here sought work in Kokomo,

which was otherwise out of their labor market. Union Append. Tab 1, Clark Decl. ¶ 5. All other aspects of Section 64 remained the same.

With respect to seniority, Section 64(b) provides that laid-off employees who obtain a work opportunity at another plant "shall rank for seniority as of the date of entry in the plant." Hill Aff. Ex. B. It appears, however, that the seniority they earned at their former plant continued as long as they were working at some plant in the state. If the employee was subsequently laid off from the new plant, he or she was required to elect which seniority date should be used for calculating his or her recall status ("Competitive Seniority"). Union Append. Tab 1, Clark Decl. ¶ 6. Employees could retain their seniority dates in the new plant and be in line for recall there, in which case their Competitive Seniority at the old plant would be terminated. Alternatively, employees could elect to retain their old Competitive Seniority, which meant that they would not be in line for recall at the new plant. *Id.*

The Employees here had obtained work through the Indiana Work Opportunity Plan at the Kokomo plant, but were laid off shortly thereafter. Hill Aff. ¶ 8; Union Append. Tab 3, Smith Dep. at 97. At the time of that layoff, they were required to make an election regarding their Competitive Seniority status. Each one of the plaintiffs elected to retain their Kokomo Competitive Seniority, which meant they lost their Indianapolis Plant seniority for purposes of recalls. Hill Aff. ¶ 9, Ex. E. All of the seniority election forms were signed by the Employees by March 2, 1987. *Id.* According to the terms of the national CBA, Section 64(b), however, an employee who accepted work under the Work Opportunity Plan retained his former seniority rights for purposes of vacation, holidays, pensions, insurance and the Supplemental Unemployment Benefit Plan ("Corporate Seniority"). *Id.,* Ex. B, Section 64(b).

What has created the conflict in this case is the existence of a different program that applies when a plant is being closed. In that case, laid off employees' ability to acquire work at other plants is reflected in the Memorandum of Understanding on Plant Closings

(the "Memorandum"), entered on October 28, 1985, by Chrysler and the Union. Hill Aff., Ex. B. The Memorandum provides that anyone on layoff when a plant closing is announced or occurs, or anyone laid off pursuant to a plant closing, may obtain a job that is open by reason of attrition at any other plant in the United States. *Id.* It also allows these employees to retain the same Corporate and Competitive Seniority date they had at the plant that is closing. *Id.*

A clue to the reason behind this concession is found in the second "whereas" clause of the Memorandum, which reads:

> WHEREAS, due to the plant closing such laid off employees have no recall rights to any Corporation plant.

In the case of Section 64, an employee technically has two plants at which he enjoys Competitive Seniority, and two plants to which he may be recalled. In the case of a laid off worker from a plant that has closed, there is no plant left at which he can enjoy any seniority and to which he could be recalled.

Those employees who worked at the Indianapolis Plant or who otherwise retained their Indianapolis Competitive Seniority at the time its closing was announced, March 9, 1987,[1] became eligible for work opportunities under the terms of the Memorandum. *See* Hill Aff. ¶ 12; Clark Aff. ¶ 9; Smith Dep. at 108. Some of those employees transferred to Kokomo, bringing with them all of the seniority they had accumulated at Indianapolis. Hill Aff. ¶ 14. Similarly, in 1991 and 1992, when a St. Louis plant was closed, some of their employees obtained work, through attrition, at the Kokomo Plant and they retained all of their former seniority. Hill Aff. ¶ 19; Smith Dep. at 181. Because the announcement of the Indianapolis Plant closing occurred after all of the Employees had made their Competitive Seniority elections, they were no longer considered as employees of or on layoff from Indianapolis.

The Employees objected to being denied their Indianapolis Plant Competitive Seniority at the Kokomo Plant when other workers were arriving with full seniority from their former plants. They wrote letters to the Local Union, who referred them to the International Union, with whom they lodged protests and from whom they sought help. Hill Aff., Ex. G. The International Union wrote back to each of them by November 2, 1987, that there was nothing that could be done about their Competitive Seniority status. The letter stated in part:

> I am sorry, but when you elected to retain your seniority at the Kokomo Transmission plant you gave up all seniority rights including plant-closing rights at the Indianapolis Electrical Plant. Your election cannot now be changed.

Clark Aff., ¶ 11, Ex. D. The Employees, however, filed no formal grievances on this issue.

The forms the Employees signed electing to retain their Kokomo Plant Competitive Seniority clearly stated beneath the box they had to mark, "I UNDERSTAND THAT MY SENIORITY WILL BE TERMINATED AT ALL PLANTS OTHER THAN THE ONE WHICH I HAVE ELECTED." Hill Aff., Ex. E. The Union did not file any grievances on behalf of the Employees because, under the terms of the Work Opportunity Plan and the national CBA, their seniority dates were correct. Hill Aff. ¶ 18.

Some of the Employees filed age discrimination claims in January and March, 1993, with the Equal Employment Opportunity Commission ("EEOC"). These employees believed the workers who had retained all of their former seniority when they transferred to Kokomo were younger. The EEOC terminated its investigation in July, 1993, and on October 28, 1993, the present suit was filed claiming age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Initially that was the only claim in the complaint.

Various pre-trial activities or filings have occurred, including an amended complaint in May, 1995, and a case management plan ("CMP") in February, 1994. According to the CMP, the parties had until April 30, 1994, for amendments to pleadings, November 30,

---

1. A newspaper article in December, 1986, stated the Indianapolis Plant would close, but no official announcement occurred until March, 1987. Smith Dep. at 108.

1994, for discovery, and they agreed that all dispositive motions were to be filed within fifteen days of the close of discovery. Plaintiff Smith was deposed on April 22, 1994. On March 2, 1995, both the Union and Chrysler filed their motions for summary judgment, followed by the Employees' motion for leave to amend, which was filed on April 29, 1996.[2] The Employees have not responded to the motions for summary judgment and the time for doing so has expired.

## B. ANALYSIS

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its complaint at any time by leave of the court, and that leave "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); see Toth v. USX Corp., 883 F.2d 1297, 1298 (7th Cir.), cert. denied, 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989). Limits on amendment do exist, however. Most importantly for this case, an amendment cannot "unfairly surprise or prejudice the defendant," Toth, 883 F.2d at 1298, and should be denied when it would prove "futile" or would fail to remedy defects in the operative complaint. Moore v. State of Indiana, 999 F.2d 1125, 1128 (7th Cir.1993); Williams v. U.S. Postal Serv., 873 F.2d 1069, 1072 (7th Cir.1989).

■ The Employees claim they must amend the complaint to conform to the evidence revealed in a key document they have recently obtained from defendant Chrysler, namely a listing of the comparative ages of and corporate seniority dates for the Indianapolis and St. Louis employees transferring in to Kokomo. Plfs' Reply to Defs' Resp. to Plfs' Mot. to File Am.Comp. at 7, n. 2. According to the Employees, their original request for this document was made in December, 1994. According to the Notice filed by the defendant Chrysler regarding the status of the summary judgment motions, the requested discovery was provided to the Employees on April 11, 1996. Given that the Employees' motion for leave to amend the complaint was filed eighteen days after their receipt of this discovery from the defendant, the Court cannot deny the motion on the basis of undue delay.

The Second Amended Complaint, comprised of four counts, sets forth claims of breach of the CBA against Chrysler (First Count); breach of the CBA against the Union for "wrongfully preventing the occurrence of a condition precedent" to the Union's duties to the Employees (Second Count); violation of § 510 of ERISA, 29 U.S.C. § 1140, by Chrysler (Third Count); and intentional misrepresentation or fraud under Indiana law against both defendants (Fourth Count). Upon reviewing the proposed amended complaint the Court notes that the factual allegations remain relatively unchanged. Additional facts have been added to support the different types of claims presented, but not to the extent that the defendants would have to start all over again with discovery.

■ Defendants have the burden of showing that the amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice. Ward Elec. Serv. v. First Comm. Bk., 819 F.2d 496, 497 (4th Cir.1987). To meet that burden, the Union argues that because this action had gone on for two and one-half years by the time the proposed amendment was filed to add theories that could have been added originally, the Employees should not be allowed to do so. In essence, they are arguing that it is too late to amend the complaint. However, the Union must show that such an amendment would cause undue delay or prejudice or that it would be futile, to meet the standard of proof necessary to defeat the motion for leave to amend. No evidence or argument was presented by the Union to support a finding of undue delay or prejudice, and the Court will not deny the motion for leave to amend on that basis.

2. The Court extended the time for the Employees to respond to the summary judgment motions until twenty-one (21) days after the Employees received certain discovery materials from defendant Chrysler. Order dated September 27, 1995. Chrysler's discovery responses were produced to the Employees on April 11, 1996. See Chrysler's Notice to the Court Regarding Status of Sum. J.Mot. filed May 8, 1996.

Chrysler on the other hand, argues that the untimeliness of the motion for leave to amend indicates the bad faith motive of attempting to avoid the preclusive effect of an unfavorable ruling on the pending motions for summary judgment. Relying on an Eighth Circuit case, Chrysler asserts that a court may refuse to allow amendment of pleadings to change the theory of recovery if the amendment is offered after a summary judgment and no valid reason is shown for the failure to present the new theory earlier. *See Humphreys v. Roche Biomedical Lab., Inc.,* 990 F.2d 1078 (8th Cir.1993).

In *Humphreys,* a medical malpractice plaintiff suffered an adverse decision on a motion for summary judgment before she sought leave to amend her complaint to proffer a different theory of recovery. *Id.* at 1081. In affirming the district court's denial of the motion for leave to amend, the *Humphreys* court noted that "different considerations apply to [such] motions filed after dismissal." *Id.* at 1082. After a complaint is dismissed, the right to a Rule 15(a) amendment terminates. *Id.* It is in this context that the *Humphreys* court wrote the language paraphrased by Chrysler to persuade this Court to deny the Employees' motion.

That language provides that a court does not abuse its discretion by "refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment has been granted ... and no valid reason is shown for the failure to present the new theory at an earlier time." *Id.* Chrysler's paraphrase of that language, however, implies that such restrictions on amendments apply when leave is sought following the *filing* of a motion for summary judgment, but before it has been decided adversely to the plaintiff. This Court does not read *Humphreys* that way, and is therefore not persuaded of its applicability to this case.

Alternatively, Chrysler claims prejudice in that extensive discovery has occurred and the deadline for discovery has passed. The company also claims that the Employees are attempting to completely alter the posture of the case by alleging totally new theories of recovery. Accusing the plaintiffs of "lack of

diligence," Chrysler argues that it is now faced with the dilemma of defending an "entirely new lawsuit after the deadline for discovery and dispositive motions has passed." Chrysler Corporation's Resp. to Plfs' Mot. to File Second Am.Compl. at 4. Chrysler also asserts that the Employees have not offered any valid reason for the delay, and that no new evidence was discovered that necessitated a change in theory.

With respect to the last assertion, the Court cannot agree. The Employees have stated that the reason for changing theories is that their original claim was based on an age discrimination claim. Chrysler maintained in its possession the records from which a statistical analysis could be derived to defeat or support such a claim. As noted by the Employees, and not denied by Chrysler, those records only recently came into the hands of the Employees. Shortly after receipt of that evidence, the Employees realized that their "original age discrimination theory [did] not conform to the facts of the case." Plfs' Reply at 6. Consequently, they sought leave to amend the complaint to reflect theories of recovery more compatible with the facts. *Id.* Finding the Employees' explanation a valid reason, the Court will not deny the motion for leave to amend on the basis that the new theories should have been offered earlier.

Likewise, Chrysler has failed to show that it will be unduly prejudiced by an amendment. The company argues that two and one-half years of the Court's time has been wasted, and Chrysler has incurred attorney fees and expenses in getting to this point. According to Chrysler, the Employees are trying to circumvent the preclusive effect of summary judgment on the ADEA claim by seeking to amend the complaint. In this Court's view, the amount of time consumed thus far can be attributed just as much to Chrysler, who delayed producing sought-after documents for nearly eighteen months. Seen in this light, the Court is not inclined to find that an amendment to the complaint based on the facts revealed by that discovery will cause undue prejudice to the defendants.

██ Moreover, a court may allow amendment to change the theory of the case

up to and even after trial, in the absence of a clear showing of harm to the defendant from the tardy amendment. *United States v. Security Pacific Bus. Cred., Inc.*, 956 F.2d 703, 707–08 (7th Cir.1992). The burden of additional research, without more, does not suffice to show the type of harm that would defeat the plaintiff's right to amend. *Id.* at 708. Neither Chrysler nor the Union has presented this Court with any reasons to deny leave to amend on the basis of undue delay, prejudice or bad faith.

■ Nevertheless, the alternative ground for denying the Employees' motion for leave to amend presents a more likely candidate to justify such denial. Both defendants argue that leave should be denied because the proposed amendment would be futile. An amendment is futile if the "amended pleading could not survive a motion for summary judgment." *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989).

■ In opposing the accusation of futility, the Employees mistakenly rely on a Second Circuit case in which leave to amend was denied following the dismissal of a complaint under Rule 12(b)(6). *See Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2nd Cir.1991). The appellate court reversed the district court's denial of leave because sufficient facts were alleged in the amended complaint to allow the inference of a municipal policy or practice of poor training and supervision of the transit police. *Id.* Discussing the standard by which the amended pleading should be judged at the pleading stage, the *Ricciuti* court noted the applicable standard would be from Rule 8(a), whether the pleading contains a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

Here, the motion for leave to amend has been filed not at the pleading stage, but at the summary judgment stage, which constitutes a very different procedural posture than in *Ricciuti.* Consequently, the standard noted in *Wilson* would apply. *See Wilson*, 874 F.2d at 392 (leave to amend denied at summary judgment stage when amendment would not survive a summary judgment). Faced with the affidavits and documentary evidence filed by the defendants in support of summary judgment, the Court cannot assess the proposed amended complaint as if that evidence does not exist. Consequently, for purposes of determining the futility of the Employees' proposed amended complaint, all of the unopposed materials filed in support of defendants' summary judgment motions will be considered.

■ The reasons for the alleged futility vary depending on the claim being discussed. With respect to count one, Chrysler argues futility based on the applicable statute of limitations and the failure to exhaust administrative remedies. Chrysler denominates the Employees' claim against it for breach of the CBA as coming under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The applicable statute of limitations for such a claim is six months. *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Pointing to the Employees' own allegations in the Second Amended Complaint, Chrysler notes that the event on which the alleged breach is based occurred no later than March 1987. *See* Second Am.Comp. ¶¶ 20–27. Because this action was filed on October 28, 1993, it is undisputed that six and one-half years lapsed between the alleged breach and the filing of suit.

The Employees disagree with Chrysler's characterization of their claim as coming within *DelCostello*, arguing instead that it is more appropriately considered a breach of contract claim, subject to the Indiana statute of limitations for breach of contract. Citing *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Employees assert that Indiana's six year statute of limitations for a claim based on breach of an unwritten contract would apply. This same argument is invoked in regard to both the breach of contract claim against Chrysler and against the Union. Without explaining why the Court should find that the filing of this action six and one-half years after the claim accrued was timely under a six year statute of limitations, the Employees merely argue against using a six-month statute of limitations and

then proceed to the exhaustion of remedies issue.

In *Hoosier Cardinal* the Supreme Court applied the Indiana statute of limitations for unwritten contracts to a union's action against the employer alleging breach of the CBA for failing to pay accumulated vacation pay to employees. *Hoosier Cardinal*, 383 U.S. at 705–07, 86 S.Ct. at 1113–14. The rationale used was that the relevant proof depended both on the written CBA and on the separate oral employment contracts of each employee. *Id.* Ten years ago, the Seventh Circuit offered a well-reasoned analysis of the difference between the type of contract action and corresponding limitations period used in *Hoosier Cardinal*, and the type employed when the action is a hybrid § 301 and breach of duty of fair representation claim. *International Un. of Elev. Const. v. Home Elevator Co.*, 798 F.2d 222, 229–30 (7th Cir.1986).

The *Home Elevator* court also noted that subsequent to *Hoosier Cardinal* the Indiana legislature added a two-year limitations period that applied to employment disputes not based on a written contract. *Id.* Finding the new two-year limitations period to be applicable to claims alleging breach of the CBA, the Seventh Circuit reversed the district court's dismissal of the union's claim as untimely under the six-month limitations period for hybrid § 301 breach and unfair labor practices claims. *Id.*

More recently, in a case very analogous to the present one, the Seventh Circuit further clarified the analysis. Noting that claims asserted under § 301 of the LMRA may be subject to different limitations periods depending on the facts, the court again chose to apply the state statute of limitations for employment disputes.[3] *Jones v. General Elec. Co.*, 87 F.3d 209, 211–12 (7th Cir.1996). In *Jones*, the plaintiff brought his action on behalf of a group of former employees of General Electric's Decatur, Indiana, plant, who lost their jobs when the plant closed. The employees were members of a union and had worked under the provisions of a CBA negotiated by the union and General Electric. Upon the closing of the Decatur plant, the employees were allowed to bid on jobs in the Fort Wayne General Electric plant, which they each obtained. *Id.* at 211.

According to Jones, the employees had been told that the CBA allowed their seniority and accompanying service credits from the Decatur plant to follow them to the Fort Wayne plant. *Id.* at 210. Upon arriving at the Fort Wayne plant, the employees learned that they had lost all of their previous seniority and credits as a result of a process called "endtailing." *Id.* at 211. No special agreement had been negotiated by General Electric and the union about plant closing procedures, so Jones considered the endtailing process a violation of the CBA. Jones' suit was filed in January, 1995, nearly six years after the plant had closed.

Because Jones' claims alleged only violations of the CBA, and asserted that he was told that his seniority and related benefits would continue, the court found his situation very similar to *Home Elevator*. *Id.* at 212–13. To distinguish *Home Elevator*, Jones argued that a letter "apparently" sent to all the employees discussing a revision in their seniority dates constituted a written employment contract on which the action is based. *Id.* at 213. The court enumerated the elements of an employment contract and found that the letter did not satisfy those criteria.

Jones also argued that the letter and the CBA together constituted a written employment contract on which the action could be based. Unfortunately the case he relied on was an ERISA case, in which the CBA and a written group life insurance policy were so construed and the ten year statute of limitations for written contracts applied. *Id.* at 213 (citing *Anderson v. Flexel, Inc.*, 47 F.3d 243 (7th Cir.1995)). The *Jones* court found that an insurance policy was much more substantial than a one-page letter, and that the *Anderson* court noted that it could have considered applying the two-year employment

3. Specifically, Indiana Code § 34–1–2–1.5 provides in pertinent part that:
 All actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract ... shall be brought within two (2) years of the date of the act or omission complained of.

limitations period, but the defendant had waived the defense.

Faced with no reasonable authority for finding that Jones' claim did not fall within the parameters of *Home Elevator*, the court held that it was sufficiently similar to require the application of the two-year limitations period. *Jones*, 87 F.3d at 213. Further, the court noted that the "policy rationales expressed in [*Home Elevator*] are of continuing relevance and persuasiveness." *Id.*

■ Here, like in *Jones*, the Employees have brought a breach of contract action against Chrysler based on its alleged violation of the Employees' rights under the CBA as third party beneficiaries. Second Am. Comp. ¶ 37. Such a claim depends not only on the written provisions of the CBA, but also on the separate unwritten employment contracts of each Employee. Consequently, the statute of limitations that applies to the action against Chrysler is the two-year employment limitations period. The cause of action accrued in March of 1987 and the action was not filed until October 28, 1993. The claims enumerated in the First Count of the proposed amended complaint would not survive a motion for summary judgment and are therefore futile.

■ Turning to the claims in the second count, the Court finds that it, too, is based on an alleged breach of the CBA by the Union. Specifically, the Employees claim that the Union prevented the occurrence of a condition precedent to some unspecified duties the Union undertook in the CBA.[4] However, it is not clear exactly what the Union was supposed to have done to prevent the occurrence of the condition precedent. Reviewing all of the evidence of record, the Court can find only two possible acts. First, the Union agreed in 1985 to the provisions in and a modification of § 64 of the CBA, that describe the terms for and allow employees who were laid off to seek work opportunities outside their labor market. Second, the Union allegedly told the Employees that if they signed a Work Opportunity letter their In-

dianapolis seniority would be retained should they obtain work in another plant.

Given that the Employees' claim against the Union is based on both a provision of the written CBA and on alleged oral representations, and given that proof of their damages would require proof of each employee's unwritten employment contract, the court finds this claim to be one in which the Indiana statute of limitations for claims based on unwritten contracts applies. However, it is not clear whether a claim for breach of the CBA against the Union would come within the scope of the "Employment related actions" two-year limitations period. The Court need not decide that issue because if it would not, it most certainly would fall within the rule set forth by the Supreme Court in *Hoosier Cardinal*, 383 U.S. at 706–07, 86 S.Ct. at 1113–14. There the Court found that the Indiana six-year statute of limitations for claims based on unwritten contracts would apply to cases such as these.

Because the cause of action against the Union accrued either at the time it entered the CBA in 1985, or at the time it made its alleged representations about the Employees' seniority status, it does not matter which of the two Indiana statutes apply. Under either statute an action brought at a minimum of six and one-half years after the cause of action accrued is untimely. The claims alleged in the Second Count of the proposed amended complaint would not survive a summary judgment motion and thus this amendment would be futile.

Turning to count three, the Court acknowledges that a ten year statute of limitations based on a written contract might apply as the Employees argue. Chrysler points to a similar case, in which an employee claimed that his layoff had the effect of impairing his right to certain benefits, and the Seventh Circuit decided that the most analogous statute of limitations was the one used for retaliatory discharge. *Teumer v. General Motors Corp.*, 34 F.3d 542, 549–50 (7th Cir.1994) (stating that contract's "wrongful prevention

---

**4.** The Court is not satisfied that the Employees have stated a claim other than one for breach of the duty of fair representation, which would be

subject to the *DelCostello* six-month statute of limitations. Since the same result would occur, it is not necessary to reach that issue in this case.

doctrine" is not the only viable analogue to ERISA interference claims).

The Employees rely on a district court case in which the court decided that Indiana's ten year statute of limitations for contracts in writing would apply to an action by an employee who had been discharged for alleged wrongful conduct. *See Spearman v. General Motors Corp.*, 880 F.Supp. 617, 618 (S.D.Ind.1994). Spearman alleged that his company really discharged him to prevent him from collecting his full pension benefits. *Id.* The district court found that the action involved the payment of pension and retirement benefits, and was thus a suit on a written contract. *Id.* at 621. This dispute need not be resolved, however, because even if the ERISA claim is timely, allowing an amendment to add such a claim would still be futile.

■ Essentially, the Employees claim that they will receive a lesser amount in their pension as a result of having lost their seniority when transferring to Kokomo. They have presented no evidence or argument, however, to contradict the well-documented provisions of § 64(b) and the Work Opportunity Plan, which allow them to retain their original Corporate Seniority for benefit purposes. Some evidence must be offered to create a genuine issue of material fact about whether their pensions will be affected by Chrysler's alleged wrongdoing. Moreover, the Employees have failed to make any allegations are offer any proof that they attempted to exhaust their internal plan remedies, a judicially-imposed requirement to filing suit under ERISA. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649 (7th Cir.1996); *Powell v. A.T. & T. Comm., Inc.*, 938 F.2d 823, 825 (7th Cir.1991) (noting strong federal policy encouraging private resolution of ERISA-related disputes mandates exhaustion doctrine); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244–45 (7th Cir.1983) (same).

■ One exception to the exhaustion requirement is when a claimant shows that it would be futile to file a claim under the plan to initiate administrative remedies. *Powell*, 938 F.2d at 826. Another exception occurs when a claimant is "denied meaningful access to administrative remedies." *Id.* This exception is triggered when a procedure for filing claims against the plan has not been established or is inadequate. *Id.* at 826–27. The Employees have offered no evidence that they attempted to make a claim, asked for a declaration, or initiated an administrative review. Consequently, the Court cannot make a finding as to the futility of exhausting the internal claim procedures, or as to the adequacy of those procedures.

Because the futility of the amended complaint is being determined at the summary judgment stage, the Employees must do more than suggest that they might lose some benefits. Their effort to bring an ERISA claim based on Chrysler's alleged wrongful conduct that prevented them from obtaining benefits is unavailing. On the basis of ample proof in the record that the Employees retained their Corporate Seniority for benefit purposes, and the absence of evidence that they have suffered an ERISA injury, the Court finds that allowing them to amend the complaint to add an ERISA claim would be futile.

■ Finally, in count four the Employees allege that both the Union and Chrysler "knowingly and intentionally misrepresented" to them that they would be able to retain their Indianapolis seniority in Kokomo. Second Am.Comp. ¶ 45. This count would be futile for two reasons. First, the applicable statute of limitations for an action based on fraud is six years, and this action was filed more than six years after the alleged wrongful acts. Second, resolving this claim would entail interpreting the CBA and its collateral agreements.

■ When a dispute requires an interpretation of any provision of a CBA, Section 301 of the LMRA mandates the use of federal rather than state law, "to ensure uniform interpretation of collective bargaining agreements, and thus promote the peaceable, consistent resolution of labor-management disputes." *Talbot v. Robert Matthews Dist. Co.*, 961 F.2d 654, 661 (7th Cir.1992). To determine whether resolution of the state tort claim is dependent on the CBA, a court must consider the elements of the claim, in

this case the elements for fraud and misrepresentation. *Id.* To state a claim for fraud and misrepresentation under Indiana law, the Employees must show:

1. a material misrepresentation of past or existing facts;
2. which representation is false;
3. on which the plaintiff reasonably relied;
4. to his or her detriment.

*See Smith v. Colgate–Palmolive Co.,* 943 F.2d 764, 768 (7th Cir.1991); *McCarty v. Reynolds Metals Co.,* 883 F.Supp. 356, 361 (S.D.Ind.1995). Fraud is intentional or at least reckless deception. *Smith,* 943 F.2d at 768.

In any case, an essential element of fraud is reasonable but detrimental reliance. The alleged misrepresentation is that the Employees would be able to retain their Indianapolis seniority at the Kokomo plant. However, the CBA, the Work Opportunity Plan, and the form the Employees signed to elect to retain their Kokomo seniority all referred to the fact they would lose their former seniority. In Indiana, a person who relies on a representation that is false cannot recover damages based on fraud unless he or she had a right to rely on the misrepresentation. *Smith,* 943 F.2d at 769. Determining whether the Employees had the right to rely on the alleged misrepresentation depends on the meaning of the referenced language in the CBA and Work Opportunity Plan.

Moreover, whoever made the alleged misrepresentation to the Employees could have been referring to their Corporate Seniority, in which case the defense would be that what they said was not false. In either case, resolving the issue would require interpreting and applying language of the CBA. Whenever resolution of a state law tort action depends on the meaning of a CBA, the application of state law is preempted by federal law. *Id.* at 768. Courts look at whether "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985)). Consequently, amendment of the complaint to add a state law claim of fraud and misrepresentation would be futile because such a claim likely would not survive a motion for summary judgment.

## II. SUMMARY JUDGMENT MOTIONS

Because the Court has denied the Employees leave to amend the complaint, which amendment would have eliminated the ADEA claim, it becomes necessary to decide the pending motions for summary judgment. In light of the evidence of record, the Court finds that insufficient evidence exists to support a claim that the Employees were discriminated against on the basis of their age. The average age of the Employees is 43.1 years, and the average age of the employees from St. Louis is 43.8 years. This insubstantial age differential does not support an inference that the employees from St. Louis were treated more favorably than the plaintiffs because of their age. In fact, on average, the St. Louis group is older.

In addition, the Employees' brief for the motion to amend informs the Court that they do not think a claim for age discrimination could be proven. To explain why they are changing theories, the Employees stated that "the original age discrimination theory does not conform to the facts of the case...." Plfs' Reply Brf. at 6. In light of the above, the Court finds that the defendants' motions for summary judgment on the ADEA claim are well-taken and should be **GRANTED.**

## III. CONCLUSION

Plaintiffs' motion for leave to amend the complaint in order to add counts of breach of the CBA, violation of ERISA and fraud or misrepresentation in violation of state law, must be **DENIED.** Although the motion cannot be defeated on the basis of undue delay or prejudice, it cannot succeed because the amendment of the complaint would be futile. Each of the four counts the Employees seek to add have been found to be lacking in sufficient proof to be able to withstand a motion for summary judgment. Because amendment has been sought at the summary judgment stage, the Employees must do

more than suggest that they might be able to prove such claims.

If the amended complaint had been allowed, the pending motions for summary judgment filed by Chrysler and the Union on the ADEA claim would have been rendered moot. Because the Court has denied the Employees leave to amend, it has reviewed the summary judgment motions and has made a summary ruling. No genuine issues of material fact exist with respect to the facts necessary to prove discrimination on the basis of age, and the undisputed facts show that the defendants are entitled to judgment as a matter of law. The pending motions for summary judgment are therefore GRANTED.