933 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roy E. SHERMAN, Plaintiff-Appellant,
v.
CHASE PACKAGING CORP., Defendant-Appellee.
 No. 90-4033.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1991.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Roy E. Sherman, appeals the district court's grant of summary judgment to defendant-appellee, Chase Packaging Corp., on plaintiff's age discrimination, ERISA, and pendent state law claims. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Plaintiff was employed by Chase Packaging Corporation ("Chase" or "defendant") from 1960 to 1971 and from 1973 to 1989. Plaintiff had been transferred several times at defendant's request to various Chase facilities. The claims in this case arise out of defendant's discharge of plaintiff on or about January 5, 1989. Defendant is involved in the business of manufacturing flexible packaging materials, and has a number of manufacturing facilities around the United States. One of the facilities owned by Chase, the Chagrin Falls, Ohio, plant, was sold to Ivex of Ohio, Inc. ("Ivex") in early January 1989. Chase retained no interest in the plant. The sale of the plant had been contemplated by Chase at least as far back as 1986, and negotiations between Chase and Ivex began in 1988.
 
 
 3
 Ivex did not tell Chase which employees at the plant would be retained until about January 4, 1989, two days before the sale took place. Chase was informed on January 4 that Ivex would not be hiring eight employees at the plant, including plaintiff. Chase discharged all those persons; plaintiff was discharged on or about January 5, 1989. Shortly thereafter, he was granted severance pay by the defendant.
 
 
 4
 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on April 12, 1989. Subsequently, plaintiff brought this lawsuit containing several claims: age discrimination in violation of 29 U.S.C. Secs. 621-634; violation of ERISA, 29 U.S.C. Sec. 1140; age discrimination under the Ohio statute, Ohio Rev.Code Sec. 4101.17; common law state claims for breach of contract, wrongful discharge and promissory estoppel; and negligent performance of contractual obligations.
 
 
 5
 Defendant filed a motion for summary judgment on September 11, 1990. Seventeen days prior to trial, plaintiff filed a motion for leave to amend the complaint, and on October 4, 1990, filed a second amended complaint alleging newly discovered evidence for a state law claim of intentional and negligent misrepresentation. The district court denied plaintiff's motion to amend and granted defendant's motion for summary judgment. Plaintiff timely filed this appeal.
 
 II.
 
 6
 Plaintiff argues that the district court abused its discretion in denying plaintiff's motion to amend his complaint.
 
 
 7
 The determination of whether a motion to amend will be granted is left to the sound discretion of the trial court. Forman v. Davis, 371 U.S. 178, 182 (1962); Estes v. Kentucky Utilities Co., 636 F.2d 1131, 1133 (6th Cir.1980). Case law establishes that a motion to amend on the eve of trial after discovery has been closed is properly denied absent the discovery of new facts. Deasy v. Hill, 833 F.2d 38, 41 (4th Cir.1987) (amendments near time of trial are disruptive and therefore subject to special scrutiny), cert. denied, 485 U.S. 977 (1988); First National Bank of Louisville v. Master Auto Service Corp., 693 F.2d 308, 314 (4th Cir.1982) (motion to amend properly denied when made nineteen days before trial and where amendment was not the result of movant's discovery of new facts). Thus, plaintiff's motion made initially seventeen and then eleven days prior to trial was properly denied absent discovery of new facts.
 
 
 8
 In his Motion for Leave to File his Second Amended Complaint, plaintiff sought to add state law claims for intentional and negligent misrepresentation. Accompanying the motion was a January 13, 1989 transcription of a purported taped telephone conversation, which occurred five months prior to the filing of the original complaint. The district court concluded that the facts which formed the basis of plaintiff's "new claims" were known to him from the time the original complaint was filed and should have been apparent from the outset. We agree.
 
 
 9
 Additionally, in Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents served on February 7, 1989, defendant provided documents including a list of all salaried employees with their dates of birth and dates of hire, a list of all office managers from 1985 through 1989, and a "List of Salaried Hires January, 1988 to Date," including a job description and date of hire. Identified as office managers in these documents are J. Drake and R. Ludington. Thus, it is not true as plaintiff alleges that "plaintiff and counsel were unaware [prior to the September 4-6, 1990 depositions] ... that jobs had, in fact, become available and those jobs were offered and filled by younger persons (i.e., J. Drake and R. Ludington)." Because plaintiff unduly delayed making this claim and because granting the motion would cause prejudice to defendant (who had no notice), it was not an abuse of discretion for the district court to deny the motion. Isaac v. Harvard University, 769 F.2d 817, 829 (1st Cir.1985); Merchantile Trust Co. Nat. Ass'n v. Inland Marine Products Corp., 542 F.2d 1010, 1012 (8th Cir.1976).
 
 III.
 
 10
 The Age Discrimination in Employment Act, 29 U.S.C. Sec. 623(a)(1) states, "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." The plaintiff employee bears the burden of proving a prima facie case of discrimination as well as rebutting any legitimate explanation for the discharge offered by the employer.
 
 
 11
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 12
 Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, (1981) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).
 
 
 13
 In the present case, the district court concluded that the plant where plaintiff worked was sold to another corporation, which chose not to hire plaintiff, and therefore the discharge involved an employer's reduction in force (RIF). In a RIF discharge, a plaintiff must present additional direct, circumstantial, or statistical evidence tending to indicate that the defendant singled him out for discharge for impermissible reasons. Barnes v. Gen. Corp. Inc., 896 F.2d 1457, 1469 (6th Cir.), cert. denied, 111 S.Ct. 211 (1990). Plaintiff's evidence "must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." Id. at 1466. It is insufficient for plaintiff merely to demonstrate that younger persons were retained in other jobs for which plaintiff was qualified to perform. Id. at 1465.
 
 
 14
 The district court concluded that in the present case, plaintiff failed to meet his burden of establishing a prima facie case of age discrimination in a reduction-in-force discharge. After a careful review of the record, we find no error in the district court's factual findings or conclusions of law in regard to this claim. We therefore affirm the district court on this issue.
 
 IV.
 
 15
 We must next decide whether the district court erred in granting summary judgment on plaintiff's state age discrimination claim.
 
 
 16
 Plaintiff contends that his discharge also violated Ohio Rev.Code Sec. 4101.17, Ohio's statutory prohibition against age discrimination. Both parties agree that disposition of the ADEA claim is controlling with respect to the state claim because the Ohio Supreme Court held in Barker v. Scovill, Inc., 6 Ohio St.3d 146 (1983) that federal law is to be followed in state age discrimination claims because the essential elements and burden of proof under the federal and state law are identical. Plaintiff's failure to establish a prima facie federal case thus defeats his state law claim as well.
 
 V.
 
 17
 Plaintiff also argues that the district court erred in granting summary judgment on plaintiff's ERISA claim.
 
 
 18
 Plaintiff alleges that his discharge entailed a substantial savings for defendant because he had a vested pension plan at Chase and benefits under the plan are a function of an employee's salary and years of service.
 
 
 19
 This allegation fails to state a violation of ERISA, 29 U.S.C. Sec. 1140. To be successful on an ERISA claim, a party must prove that the employer made the decision to discharge him with the specific intent to violate ERISA. Gavalik v. Continental Can Co., 812 F.2d 834, 851 (3rd Cir.1987); Clark v. Resistoflex Co., 854 F.2d 762, 770 (5th Cir.1988).
 
 
 20
 Plaintiff must establish more than the mere fact that termination of his employment meant a monetary savings to defendants, 'for to allow otherwise would mean that an ERISA violation would automatically occur every time an employer terminated a vested employee.' The 'something more' which must be shown is a casual link between pension benefits and the adverse employment decision. In order to survive defendants' motion for summary judgment, plaintiff must come forward with evidence from which a reasonable jury could find that defendants' desire to avoid pension liability was a determining factor in plaintiff's discharge.
 
 
 21
 Nixon v. Celotex Corp., 693 F.Supp. 547, 555 (W.D.Mich.1988) (citation omitted).
 
 
 22
 Thus, in the present case, it was incumbent upon plaintiff to demonstrate that Chase's specific intent, purpose and motivating factor behind his discharge was to deprive him of benefits or rights conferred under ERISA. Plaintiff cannot demonstrate this where, as here, a discharge occurred through a bona fide sale of the facility where he worked and there was a corresponding reduction in the work force. The only evidence plaintiff offers that the employer specifically intended to violate ERISA is his lost opportunity to accrue additional benefits. Such a claim does not provide sufficient evidence to separate that alleged intent from the legitimate reason Chase had for discharging him. Corum v. Farm Credit Services, 628 F.Supp. 707, 718 (D.Minn.1986). For these reasons, the grant of summary judgment on the ERISA claim was correct.
 
 VI.
 
 23
 We must finally decide whether the district court erred in dismissing plaintiff's pendent state law claims.
 
 
 24
 The parties agree that under Ohio law, the general rule is that an employment agreement purporting to be permanent, for life, or for no fixed time period is considered to be employment terminable at the will of either party. Henkel v. Educational Research Council of America, 45 Ohio St.2d 249 (1976). Plaintiff argues that the present case falls within the exception articulated in Mers v. Dispatch Printing Co., 19 Ohio St.3d 100 (1985), in which the court stated that "a for just cause" employment contract could be created by the "character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question." Id. at 104. Plaintiff argues that he has presented evidence indicating that Chase has a written "just cause policy." Plaintiff presented his own testimony, the affidavit of Charles Wicks, a company newsletter relating to termination of salaried employees, and a termination of employment card in support of this contention.
 
 
 25
 We believe that defendant has persuasively argued that these items do not constitute a written policy for just cause. What is dispositive of this issue is that Chase's written termination policy, contrary to plaintiff's contention, does not limit terminations to ones for just cause. Specifically, the policy states:
 
 
 26
 Any employee who resigns or is discharged for cause is not eligible for any termination pay. Employees who are terminated by the company will receive pay for the vacation allowance as outlined in policy bulletin no. 9. In addition, depending on the circumstances that led to the termination as well as the length of service of the individual, the company will grant termination pay with consideration being given to recommendations made by the individual's immediate supervisor. Any termination pay which may be granted will be determined by the personnel committee.
 
 
 27
 If Chase's policy were limited to discharging employees only for "just cause," there would be no provision conferring termination pay benefits on certain employees and excluding it from those who resign or are discharged for cause. Moreover, the fact that as a result of changes in the economy, product lines, and technical advances, numerous plant closings have occurred at Chase over the last twenty years that in many instances resulted in all employees of those facilities being discharged indicates that no policy requiring retention of these employees existed.
 
 
 28
 For these reasons, the grant of summary judgment to defendant on this issue was correct.
 
 VII.
 
 29
 Plaintiff also argues that the district court erred in granting defendant's motion for summary judgment on plaintiff's claim of promissory estoppel.
 
 
 30
 Plaintiff argues that under Ohio law, an employer's right to discharge is limited where representations have been made to the employee which fall within the doctrine of promissory estoppel. As held in Mers:
 
 
 31
 We therefore hold that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
 
 
 32
 19 Ohio St.3d at 105. Plaintiff argues that on numerous occasions, Chase representatives promised him, "You'll never get rich working at Chase, but you'll always have a job."
 
 
 33
 In the present case, plaintiff had not set forth evidence which would have led him to believe he would remain employed regardless of defendant's financial status. Defendant Chase concedes that it told plaintiff that it believed plaintiff would be kept on by Ivex after the sale of the plant and that it was only at the last minute that Ivex revealed its intention to dismiss eight of the Chagrin Falls plant employees. Defendant argues that plaintiff's assumption that he would be transferred if the plant were sold was not based on a specific promise made by Chase to that effect, but on his subjective belief. The record reveals the following exchange:
 
 
 34
 Q. What gives you the belief that you had a right to be transferred to another Chase facility when this sale occurred?
 
 
 35
 A. I have been a loyal employee. I have been in six different locations. I felt very secure with Chase until my retirement. It has been, you were always let go for just cause. That's the way I came up. That's the way I administered all my discipline. I have been on both sides of the table. When I have had to let people go it was for just cause. I felt very secure in my job. I was happy at my job. I thought that I would be transferred, not just let go. Here's another thing. I'm 56 years old. And this might be a little lengthy answer, but here's why I felt secure.
 
 
 36
 Q. Just make sure you know what you're answering, why you believe that you had a right to be transferred, correct?
 
 
 37
 A. By past experiences, by the sheer fact that I've been transferred five or six times, there was, the Assistant Manager's position was a position created here in Chagrin Falls. They haven't had one in the last few years. That was created for me to bring me in here. And I just figured that a position would be made, or there was one available for me at all times because I was a loyal employee to the company. I had been in six locations. Why would I ever think that I wouldn't have a job? (Emphasis added.)
 
 
 38
 "[S]ubjective expectation[s] of permanent employment ... cannot create a contract in accordance with [a plaintiff's] understanding," Corum, 628 F.Supp. at 714-15, nor is it sufficient to make out a claim of promissory estoppel. Id. at 716. Although plaintiff testified that Paul Lux, the corporate attorney, told him his job was secure in relation to the Ivex sale, on cross examination, plaintiff stated that Mr. Lux also told him that Ivex was going to hold employees for 30 days. There is no indication that Chase promised anyone that they would be retained after the plant was sold even if the buyer did not want them and there were no jobs available at Chase for such employees to be transferred into. Thus, plaintiff cannot prove that his conditions of employment included remaining at Chase despite the elimination of his position. Moreover, it was not reasonable to rely on Lux's statement for the proposition that he had job security with Chase, when it was clear that Mr. Lux was indicating that he was confident that plaintiff would be hired by Ivex. The evidence presented by defendant indicates that when other plants were closed, sometimes employees were terminated and, at other times, employees were transferred, depending upon the availability of positions at other facilities. Plaintiff did not inquire about what would happen if Ivex did not want him or whether a position would then be available for him at another plant. Failure to do so defeats his claim of promissory estoppel. The district court is therefore affirmed on this issue.
 
 VIII.
 
 39
 To conclude, we AFFIRM the decision of the district court to grant Chase Packaging Corporation's motion for summary judgment.