Richard COATS, et al., Plaintiffs,

v.

**KRAFT FOODS, INC. and Philip Morris Companies, Inc., Defendant.**

**Civil No. 1:97CV343.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 17, 1998.

Michael C. Kendall, Michael L. Schultz, Kendall Law Office, Indianapolis, IN, for Plaintiffs.

Brian L. McDermott, Charles B. Baldwin, Locke, Reynolds, Boyd and Weisell, Indianapolis, IN, James Fenton, Eilbacher Scott, Inc., Fort Wayne, IN, Burton L. Reiter, Chief Counsel, Kraft Foods, Inc., Northfield, IL, for Defendants.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on a motion to dismiss filed by the defendants on March 20, 1998. On May 1, 1998, the plaintiffs filed an amended complaint, and also filed their response to the defendants' motion to dismiss. The defendants filed their reply brief on May 26, 1998. For the following reasons, the defendants' motion to dismiss will be granted.

### Motion to Dismiss Standard

In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them are accepted as true. *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994). Dismissal is appropriate if it appears beyond doubt that the plaintiffs can prove no set of facts consistent with the allegations in the complaint that would entitle them to relief. *Hi-Lite Prods. Co. v. American Home Prods., Corp.*, 11 F.3d 1402, 1405 (7th Cir.1993). However, the court need not ignore facts set out in the complaint that undermine the plaintiffs' claims. *Homeyer v. Stanley Tulchin Assoc.*, 91 F.3d 959, 961 (7th Cir.1996). Nor is the court required to accept the plaintiffs' legal conclusions. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996); *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988).

■ Despite the liberality of modern rules of pleading, plaintiffs may not merely rest on bare legal conclusions. Rather, in order to resist a motion to dismiss they must set out facts sufficient to "outline or adumbrate" the basis for their ERISA claims. *Panaras v. Liquid Carbonic Indus., Corp.,* 74 F.3d 786, 792 (7th Cir.1996); *Perkins v. Silverstein,* 939 F.2d 463, 466–67 (7th Cir.1991); *Sutliff, Inc. v. Donovan Cos., Inc.,* 727 F.2d 648, 654 (7th Cir.1984); *Strauss v. City of Chicago,* 760 F.2d 765, 767–70 (7th Cir.1985).

■ The issue of whether a claim is timely filed under the applicable limitations period is particularly appropriate for consideration under a Rule 12(b)(6) dismissal where the claim is untimely based on the allegations contained in the complaint. *Sandberg v. KPMG Peat, Marwick, LLP,* 111 F.3d 331 (2d Cir.1997); *Hinton v. Pacific Enterprises,* 5 F.3d 391 (9th Cir.1993).

### Discussion

In August 1995, the defendant Kraft Foods, Inc. ("Kraft"), formally announced the sale of its Kendallville facility ·to Favorite Brands International. The sale was formalized on or about September 25, 1995. On September 19, 1997, 252 individuals who worked for Kraft at the Kendallville facility filed this lawsuit. An amended complaint was filed on May 14, 1998.

In their amended complaint, the plaintiffs allege that Kraft (under the direction, influence, and control of Philip Morris) violated § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140[1] by selling "the Kendallville facility in order to interfere with the full attainment of rights by the Plaintiffs in the qualified employee welfare benefit plans under which they were participants and beneficiaries[2]." The plaintiffs further allege that:

The determining motives in the decision of the Defendants to sell the Kendallville facility were: First, the imminent, resulting, increasing expense of providing health care to the growing number of older employees; and, Second, the impending liability of the Defendants to the· employees for health and welfare and other employee benefits to which the. Plaintiffs were entitled, or to which they would have become entitled, both in the near future and over the longer term.[3]

Plaintiffs originally alleged that the defendants violated § 502 of ERISA, and also requested compensatory and punitive damages and trial by jury. In their amended complaint, however, the plaintiffs have withdrawn these issues.

■ In support of their motion to dismiss, the defendants first argue that the plaintiffs' § 510 claims are time-barred. Section 510 of ERISA does not contain a limitations period. Thus, courts apply the state law limitation period most analogous to claims under § 510. *Teumer v. General Motors Corp.,* 34 F.3d 542, 546–47 (7th ·Cir. 1994). In Indiana, a two-year limitations period applies to plaintiffs' claims under § 510 of ERISA. *Bollenbacher v. Helena Chemical Co.,* 934 F.Supp. 1015, 1031 (N.D.Ind.1996); *Ahnert v. Delco Electronics Corp.,* 982 F.Supp. 1320 (S.D.Ind.1997).

The plaintiffs do not dispute that they failed to file their § 510 claims within two years of the date they were advised of the sale of the Kendallville plant. That is, the plaintiffs knew of the sale as early as August 1995, but did not file suit until September of 1997. Yet, the plaintiffs argue that·their claims are not untimely because the discovery rule and/or equitable estoppel may apply.

■ Under the discovery rule, the statute of limitations does not start to run until the plaintiffs "discover" that they have been injured. *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990); *see also Soigni-*

---

**1.** 29 U.S.C. § 1140 provides, in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with

the attainment of any right· to which such participant may become entitled under the plan....

**2.** Amended Complaint at § 16.

**3.** Amended Complaint at § 10.

er v. American Bd. of Plastic Surgery, 92 F.3d 547, 551–52 (7th Cir.1996). The plaintiffs argue that the "injury" they suffered was not the sale of the Kendallville facility, but rather the "loss of certain benefits" in unidentified employee benefit plans and that the limitations period did not commence until they learned of this "injury".

■ As the defendants point out, however, plaintiffs' argument has been rejected by the Seventh Circuit Court of Appeals, as well as by the United States Supreme Court. That is, in employment discrimination cases, the injury arises when the adverse employment action is communicated to the plaintiff, not when the ill effects of the decision are felt by the plaintiff. Accrual is not delayed until the employees' discovery of the alleged unlawful nature of the decision. Delaware State College v. Ricks, 449 U.S. 250, 260, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). As the Seventh Circuit stated in Cada:

> The discovery rule is implicit in the holding of Ricks that the statute of limitations began to run "at the time the tenure decision was made and communicated to Ricks."
>
> * * * * * *
>
> The only string left on Cada's bow is the discovery rule, which pushes back the limitations period. The rule is not applicable here..... Ricks establishes that it is the date of firing or other adverse personnel action, not the date on which the action takes effect and the plaintiff is terminated, that—provided it is communicated to the employee, and it was here—is the date of accrual.... His suit was time-barred.

Cada, 920 F.2d at 450, 453. Likewise, this court in Bollenbacher v. Helena Chemical Company, 934 F.Supp. 1015, 1031 (N.D.Ind. 1996), stated:

> In Teumer, the Seventh Circuit expressly rejected the Plaintiff's argument that his § 510 cause of action did not accrue until "he ascertained the alleged nature of the layoff." Teumer, 34 F.3d at 550.

Bollenbacher, 934 F.Supp. at 1031 (holding that plaintiff's § 510 cause of action accrued when the employer told him that he was being laid off).

The Seventh Circuit has squarely rejected the argument that a § 510 claim accrues when the employees learn of the loss of benefits. In Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir.1992), the plaintiff argued that the limitations period applicable to § 510 did not accrue in September 1984 when she learned of her employment termination, but rather later when she learned her benefits were denied. The Seventh Circuit rejected Tolle's argument and concluded that her § 510 claim accrued when the termination decision was communicated to Tolle:

> Because the purpose of Section 510, like intentional employment discrimination cases, is to prevent actions taken for an unlawful purpose, it is the decision and the participant's [knowledge] of this decision that dictates accrual. This means that Tolle's claim accrued when CTI made and communicated this decision to Tolle.

Id. at 1141–42 (citing and applying Ricks and Cada).

In a similar case, Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 (7th Cir.1995), the Seventh Circuit distinguished the discovery rule from equitable tolling and estoppel. In Thelen, the plaintiff argued that the limitations period commenced not when he learned of his termination, but rather when he learned how old his replacement was. The Seventh Circuit disagreed:

> Thelen has confused the discovery rule with the doctrines of equitable tolling and estoppel. A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful. See, e.g., Teumer v. General Motors Corp., 34 F.3d 542, 550 (7th Cir. 1994) ("Teumer presents a meritless argument that the claim did not accrue until he first discovered the information from which he ascertained the alleged unlawful nature of the layoff. As GM rightly points out, such a contention has nothing to do with accrual; Teumer is really insisting that the limitations clock should be equitably tolled for the time in which he was unable to determine that his injury (of which he was unaware)—the layoff—was due to wrongdoing."); Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 281 (7th

Cir.1993) (parenthetical omitted); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990) (quote omitted). *Thelen*, 64 F.3d at 267. Thus, the Seventh Circuit held that the limitations period commenced on November 9, 1987, the date that Thelen was advised that he was to be terminated.

■ The defendants also point out that the plaintiffs have confused "interference claims" under § 510 with claims for benefits under § 502. Claims under § 510 are vastly different from claims for benefits under § 502. A claim under § 502 is essentially an assertion of one's contractual rights under the terms of an employee benefit plan. *Tolle v. Carroll Touch, Inc.*, 977 F.2d at 1139. Section 502 claims accrue when the benefits are denied. *Tolle*, 977 F.2d at 1139. In contrast to § 502, § 510 is designed to protect the employment status of participants and beneficiaries. *McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665, 668–69 (7th Cir.1993); *Teumer*, 34 F.3d at 544 (§ 510 "protects employment relationships from disruptions designed to frustrate the vesting of benefit plan rights or the continued enjoyment of rights already vested but yet to be partaken"). Consequently, accrual under § 510 does not "turn on the denial of benefits." *Tolle*, 977 F.2d at 1139–40. In light of the above case law, it is clear that the discovery rule does not apply to the plaintiffs' § 510 claims.

The plaintiffs also contend that their § 510 claims should not be dismissed for failure to timely file because equitable estoppel "may apply" to this case. In support of their motion to dismiss, the defendants point out that the plaintiffs have failed to point to specific facts supporting a claim of equitable estoppel. Rather, the plaintiffs merely state that "[i]f Plaintiffs produce evidence of affirmative steps taken by the Defendants designed to delay the filing of a lawsuit, equitable estoppel will bar the Defendants' timeliness defense." [4]

■ In the Seventh Circuit, when the plaintiff's complaint demonstrates it is untimely on its face, the plaintiff must plead in the complaint facts demonstrating that the failure to timely file the claim should be excused. *McGinty v. United States Dept. of Army*, 900 F.2d 1114, 1118 (7th Cir.1990); *Rylewicz v. Beaton Servs., Ltd.*, 698 F.Supp. 1391, 1398 (N.D.Ill.1988), *aff'd*, 888 F.2d 1175 (7th Cir.1989); *Cosby v. United Air Lines, Inc.*, No. 95 C 6655, 1996 WL 204323 (N.D.Ill. Apr.24, 1996) ("To justify equitable tolling, a plaintiff must plead facts that justify tolling in her complaint, not in her unsworn response to a motion to dismiss.") (citing *McGinty*, 900 F.2d at 1118).

■ In the Seventh Circuit, equitable estoppel applies only where the "defendant takes active steps to prevent the plaintiff from suing in time." *Thelen*, 64 F.3d at 267; *Soignier*, 92 F.3d at 554; *Cada*, 920 F.2d at 450; *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284 (7th Cir.1986). The defendants argue that the plaintiffs have not plead facts supporting an equitable estoppel clam either in their original complaint filed on September 19, 1997 or in their amended complaint filed on May 14, 1998. The only allegations in the plaintiffs' amended complaint that could even plausibly be read as an attempt to invoke equitable estoppel is Paragraph 9, which reads as follows:

9. The sale of the plant was formalized on or about 25 September, 1995, and the Plaintiffs did not ascertain the Defendants' true motivation for the sale of the plant until after the sale had been formalized.

A. Subsequent to the announcement of the sale of the Kendallville, Indiana facility, and prior to the formalization of the sale, the Defendants falsely promised the Plaintiffs that employees with 19 years of service on or before the sale date would be "bridged" for purposes of participation in the retirement plan.

B. The Plaintiffs did not learn that the aforementioned promise to bridge employees with 19 years of service was false until after the sale had been formalized.

C. The Administrative Committee of Kraft General Foods, Inc., failed and/or refused to respond to claims made by

---

4. Plaintiffs' Response Brief, at 5.

Plaintiffs based on the facts alleged in subparagraphs (A) and (B) above.

The defendants argue that Paragraph 9 of the amended complaint is insufficient to invoke equitable estoppel because it does not allege that the alleged "false promise" of bridging for purposes of the retirement plan was made by either of the defendants for the purpose of preventing the plaintiffs from suing in time, as required to invoke the equitable estoppel doctrine. *Thelen,* 64 F.3d at 267; *Soignier,* 92 F.3d at 554. The defendants further argue that Paragraph 9 of the amended complaint focuses solely on whether plaintiffs were falsely promised bridging of retirement plan benefits after the sale (which is akin to a claim under § 502), and does not relate to whether the Kendallville facility was sold in violation of § 510. Thus, the defendants conclude that the plaintiffs' amended complaint does not state a viable claim of equitable estoppel.

This court agrees with the defendants on this issue. First, the language of the plaintiffs' response brief itself indicates that the plaintiffs do not have any factual basis to support an allegation that the defendants took actions causing the plaintiffs to delay filing their lawsuit. Specifically, at page 5 of their response brief, the plaintiffs state: *"If* Plaintiffs produce evidence of affirmative steps taken by the Defendants designed to delay the filing of a lawsuit, equitable estoppel will bar the Defendants' timeliness defense." (emphasis added). Secondly, the allegation in the plaintiffs' amended complaint of "false promises" does not relate to the subject of the alleged § 510 violation, *i.e.,* the sale of the Kendallville facility in order to interfere with the full attainment of rights by the plaintiffs in the benefit plans. The plaintiffs have focused on the sale of the facility as the adverse employment act. Thus, any factual basis asserted in support of equitable estoppel must likewise relate to the sale of the facility.

■■■■ The defendants next argue that the plaintiffs have failed to allege exhaustion of administrative remedies before asserting their § 510 claims. Pursuant to ERISA, employers must establish procedures for reviewing employees' claims under their employee benefit plan. *See Byrd v. MacPapers, Inc.,* 961 F.2d 157, 160 (11th Cir.1992). The federal courts strongly favor exhaustion of these ERISA claims procedures prior to filing a lawsuit under ERISA. *See Kross v. Western Elec. Co., Inc.,* 701 F.2d 1238 (7th Cir.1983); *Powell v. AT & T Communications, Inc.,* 938 F.2d 823, 826 (7th Cir.1991). The Seventh Circuit has cautioned that "Congress intended that plan fiduciaries, rather than federal courts, have the primary responsibility for processing claims." *Id.* at 825; *see Challenger v. Local Union No. 1 of Int'l Bridge,* 619 F.2d 645, 649 (7th Cir.1980); *Smith v. Chrysler Corp.,* 938 F.Supp. 1406 (S.D.Ind.1996).

Exhaustion is intended to reduce the number of frivolous lawsuits under ERISA, promote consistent treatment of claims and benefits, provide a non-adversarial method of claim settlement, and decrease the time and cost of claims settlement. *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir. 1996); *Powell,* 938 F.2d at 825; *Kross,* 701 F.2d at 1244. As stated by the Seventh Circuit, exhaustion also "enables plan fiduciaries to ... assemble a factual record which will assist a court in reviewing their actions." *Lindemann,* 79 F.3d at 650; *Powell,* 938 F.2d at 826. These advantages outweigh the plaintiff's "relatively minor inconvenience of having to pursue her claims administratively before rushing to federal court." *Lindemann,* 79 F.3d at 649.

■■■■ The defendants cite *Byrd v. MacPapers, Inc.,* 961 F.2d 157 (11th Cir.1992), in support of their position that the plaintiffs were required to plead in their amended complaint that they exhausted ERISA-plan remedies or that such exhaustion was futile. In *Byrd,* the Eleventh Circuit Court of Appeals affirmed the district court's judgment on the requirement of pleading exhaustion of administrative remedies as to plaintiff's claim under § 510 of ERISA. In doing so, the Court stated:

Limiting our review to the allegations contained on the face of Byrd's complaint, we hold that the district court did not abuse its discretion in finding that plaintiff failed to plead exhaustion of administrative remedies or impossibility. Plaintiff did not

allege anything about whether she pursued any available relief under the claims procedures terms of MacPaper's employee benefits plan.

*Id.* at 160–61.

In response, the plaintiffs argue that the Seventh Circuit does not require a plaintiff to *allege* that he or she exhausted administrative remedies, because whether administrative remedies have to be exhausted at all is left to the sound discretion of the trial court. The plaintiffs do not support this assertion with any case citations. In fact, there does not appear to be any Seventh Circuit case precisely addressing the issue of whether exhaustion must be plead in the plaintiffs' complaint. However, in *Wilczynski v. Lumbermens Mut. Casualty Co.*, 93 F.3d 397, 402–04 (7th Cir.1996), the Seventh Circuit addressed whether the plaintiff had sufficiently alleged facts justifying her failure to exhaust. As the defendants note, if there were not a pleading requirement, the Court would not have needed to address whether the plaintiff adequately plead facts on exhaustion.

Additionally, the Eleventh Circuit has squarely addressed this issue, and held that pleading exhaustion or the futility of such exhaustion *is* required under ERISA. *Byrd v. MacPapers, Inc.*, 961 F.2d 157 (11th Cir. 1992); *see also Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040 (11th Cir.1995). The plaintiffs argue that the defendants' citation to *Byrd* is misplaced because the law in the Seventh Circuit places exhaustion within the discretion of the trial court, whereas the plaintiffs contend that in the Eleventh Circuit exhaustion is required in all cases. Clearly, however, the plaintiffs are mistaken on this point. Like the district courts in the Seventh Circuit, "district courts [in the Eleventh Circuit] have discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate." *Counts v. American Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir.1997).

 The only allegation in the plaintiffs' amended complaint which could be construed as an excuse for failure to exhaust is the plaintiffs' allegation in Paragraph 9(C) that Kraft's Administrative Committee "failed and/or refused to respond to claims made by Plaintiffs based on the facts alleged in subparagraphs (A) and (B)" of Paragraph 9 of their amended complaint. Subparagraphs (A) and (B), however, relate exclusively to the alleged false promise of "bridging" for purposes of plaintiffs' participation in a retirement plan. The defendants point out that the plaintiffs do not allege that they exhausted plan remedies regarding the sale of the Kendallville facility or their § 510 claims. The defendants argue that Kraft's alleged failure to address the plaintiffs' "false promise" claim does not excuse the plaintiffs' failure to exhaust their § 510 claims. Again, this court agrees with the defendants. Clearly, the plaintiffs were required to plead exhaustion or futility of exhaustion of their § 510 claim. A review of the plaintiffs' amended complaint reveals that the plaintiffs have not alleged that they pursued any administrative remedy concerning the alleged interference of their plan benefits resulting from the sale of the Kendallville facility.

 Next, the defendants argue that even if the plaintiffs' complaint was not time-barred, and even if the plaintiffs' had properly plead exhaustion, their § 510 claim still fails to state a claim under ERISA. In their amended complaint, the plaintiffs allege that the defendants sold the Kendallville facility due to "the imminent, resulting, increasing expense of providing health care to the growing number of older employees" and "the impending liability of the Defendants to the employees for health and welfare and other employee benefits to which the Plaintiffs were entitled".[5] The plaintiffs further allege that "[b]y selling the Kendallville facility, the Defendants intended to cut off or interfere with the plaintiffs' ability to collect present and/or future employee benefits."[6]

 The defendants argue that the plaintiffs have failed to allege that their employ-

---

5. Amended Complaint at ¶ 10.

6. Amended Complaint at ¶ 11.

ment was terminated as required to state a claim under § 510. Section 510 was not designed to guarantee employees a certain level of benefits. *McGann v. H & H Music Co.*, 946 F.2d 401, 407–08 (5th Cir.1991). This protection is provided under § 502. In contrast to § 502, § 510 was designed to protect an individual's employment, not the benefits arising from the employment. The Seventh Circuit has affirmatively stated that a necessary element of a § 510 claim is the termination or disruption of the employment relationship. *Teumer*, 34 F.3d at 545; *McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665, 669 (7th Cir.1993); *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990).

The defendants argue that in the present case, involving the sale of a plant, the requirement of a loss of employment is not present. The defendants' argument is bolstered by the plain language of § 510 which clearly provides that "[i]t shall be unlawful for any person to *discharge, fine, suspend, expel, discipline, or discriminate* against a participant ... for the purpose of interfering with the attainment of any right ... under the plan...." (emphasis provided). The defendants' argument is further supported by *Blaw Knox Retirement Income Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185, 1191 (3d Cir.1993), in which the Court held that § 510 does not prevent a company from selling an ongoing concern, even where the sale results in the loss of benefits to employees. *See also Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986) (§ 510 does not prohibit the sale of an existing business); *Sherman v. Chase Packaging Corp.*, 933 F.2d 1009, 1991 WL 85246 (6th Cir. May 21, 1991) (sale of facility to third party does not implicate § 510 even where employees lost their employment when they were not retained by the purchaser).

This court agrees with the defendants that § 510 was not intended to preclude a company from selling a business, even where the sale takes place in the context of allegedly rising health care costs. Section 510 was designed to preclude employers from discharging or harassing individual employees in order to keep them from obtaining vested pension rights. *Eret v. Continental Holding, Inc.*, 838 F.Supp. 358, 363 (N.D.Ill.1993). If Congress had intended to include organizational changes within the ambit of § 510, it could have easily done so. Thus, in the present case, this court holds that the plaintiffs' allegation that the defendants violated § 510 fails to state a claim. Accordingly, the defendants' motion to dismiss will be granted.

*Conclusion*

For all of the foregoing reasons, the defendants' motion to dismiss is hereby GRANTED.